## The People ex rel. Ingersoll against Garey.

The legisla-
ture have no
power to short-
en the constitu-
tional term of
office of a jus-
tice of the
peace.
   This cannot
be done indi-
rectly, by the
erection or di-
vision of coun-
ties.
   Where a
town is trans-
ferred from one
county to an-
other, or a new
county made
out of several
towns, the jus-
tices of these
towns continue
to hold their of-
fices, as justic-
es of the town
or towns in the
new counties.
   The legisla-
ture have pow-
er to enlarge or contract the territorial jurisdiction of justices of the peace.
   The office of justice of the peace is, under the new constitution and the statute which it adopts,
(sess. 41, ch. 60, s. 2,) a town office, though it has county powers.
   The appointment of more than four justices in a town would be void.

ON demurrer to the replication. On information in nature of a *quo warranto*, against *Garey*, calling upon him to shew by what warrant he acted as a justice of the peace of the county of *Orleans*, he pleaded the statute to erect a new county from part of the county of *Genesee*, by the name of *Orleans;* passed *November 12th*, 1824, (*sess. 47, ch.* 266,) providing that all that part of the county of *Genesee* comprising the towns of *Gaines, Barre, Murray, Clarendon, Ridgeway, Yates,* and *Oak Orchard,* in the county of *Genesee,* should, from and after the 1*st* day of *January,* 1826, be a separate and distinct county, by the name of *Orleans ;* and that it should be the duty of the supervisors and judges of *Orleans* to meet on the 3*d Monday* of *May,* 1826, and nominate justices for that county, proceeding in the same manner as in other cases ; and that the former justices in that county should hold until the new appointments ; that by another statute passed *April* 15*th*, 1825, (*sess.* 48, *ch.* 181,) it was provided that the

county of *Orleans* should be a distinct county from the time of the last mentioned act, instead of the time mentioned in the first; and that the town of *Shelby*, in *Genesee* county, should be annexed to *Orleans;* and that the time of appointing justices should be on the 3d *Wednesday* in *May*, 1825. That the judges and supervisors met on the last mentioned day, and nominated the defendant, a justice of the peace of *Shelby*, who took the oath of office; and acted as justice of the peace for the new county, during the time mentioned in the information. Replication, that the town of *Shelby*, on and before the 3d *Tuesday* of *February*, 1823, was a town of *Genesee* county, when the judges and supervisors of *Genesee* county nominated two justices for that town; but disagreeing as to the other nominations, the judges nominating the relator, he with a fourth justice were selected by the governor as justices of *Shelby*. That the commission of the peace for *Genesee* was filled. That the four justices for *Shelby* were, on the 27th of *February*, 1823, duly sworn; and took upon themselves the office, and entered upon its duties, *Shelby* being then a town of *Genesee* county; and so continued till after the supposed appointment of the defendant; that they are now such justices of *Shelby*, and still continue to exercise their offices in that town.

General demurrer and joinder.

*T. J. Oakley*, in support of the demurrer. The legislature had power to erect the new county; and separate *Shelby* from *Genesee* county; and make it a part of *Orleans.* By the separation, the duties and powers of the former justices ceased. They could not be exercised out of the county for which they were appointed. They could not act as members of the general sessions in *Orleans*, or do other county duties. Can their offices be retained in part? The locality as to appointment was intended merely as a measure of expediency, to limit their number; not to confer powers on them as town officers. Their powers are generally co-extensive with the county; and when their town is taken from the county for which they were ap-

pointed, those powers cease from non-residence in that county ; and cannot exist in the new one, unless continued by the legislature. The constitutional tenure for four years, is dependent on the county remaining entire, and the justices continuing in their town, as a part of it. Again, the appointment of the·new justices is valid, even if the old ones are to continue in office. The legislature may increase the number of justices in any town or county. Every person is deemed to assent to an act of the legislature.

    *Talcott,* (*attorney general,*) contra. We rely on the case *Ex parte M'Collum,* (1 *Cowen,* 550,) as conclusive. The justices have a right to hold their offices 4 years, unless sooner removed in the manner pointed out by the constitution. The assent of no one is to be presumed to an unconstitutional statute. The only inquiry is, whether the legislature have power to put the relator in such a situation that he cannot hold his office, before his constitutional term has expired. This point is directly decided in the case cited. If the legislature may increase the number of justices, they have not attempted to do so. The act contemplates the old number of four. The annexation of an old town to a new county, is not analagous to the removal of a justice from his former residence. This is voluntary. He incapacitates himself. The legislature could give no power to the judges and supervisors of *Orleans,* beyond supplying vacancies among the old justices as they should arise. So far, and no farther was this act constitutional. Probably this alone was intended.

    *J. V. Henry,* in reply. *Ex parte M'Collum* decides no more than that the old justices may be transferred by statute with their town, to another county. The provision in the constitution that these officers shall not be removed except in a certain way, does not deprive the legislature of the power to erect new counties and alter old ones. If that remains, the incidental right of officering those counties is essential. If the legislature, as is admit-

ted in *M'Collum's* case, can contract or enlarge the jurisdiction of justices in the exercise of that right; does it not follow, that they may take it away ? But if the act cannot otherwise have effect, the court will construe it as creating an additional number of justices.

*Curia, per* SUTHERLAND, J. It is contended, by the counsel for the defendant, 1. That by the separation of the town of *Shelby* from the county of *Genesee*, and its annexation to the county of *Orleans*, the duties and powers of the justices of the peace of that town ceased; and could not be exercised out of the county, in and for which they were appointed ; and 2. Admitting that the old justices still retained their powers, that the appointment of the defendant was valid, the legislature having power to increase the number of justices in any town or county.

The power of the legislature to increase the number of justices in any town or county, is conceded. But it is contended, and we think with entire success, that there is nothing in the acts creating and organizing the county of *Orleans*, from which the slightest inference can be drawn that such was their intention in this case. The number of justices to be appointed in any town, being limited to four, by a general law of the state, (*sess.* 41, *ch.* 60, *s.* 2,) every presumption is against the intention of the legislature, to vary that law in relation to a particular town or county. The reason for a departure from the general regulation, must appear on the face of the act, or the intention be otherwise clearly expressed, in order to operate as a modification or partial repeal of it. But here such intention is clearly negatived by an express provision, that the (then) present justices of the peace in the new county shall hold their offices until the new appointments are made. (§ 14.) After they are made, then, so far as depends upon the provisions and operation of this act, the former justices must cease to hold their offices.

The question then resolves itself into the inquiry, whether it was within the constitutional power of the legisla-

ALBANY,
Feb. 1827

The People
v.
Garey.

ture, under the circumstances of this case, to dismiss the old justices from office, and to direct the election of new ones; two years of the term for which they were elected, still remaining. It is supposed to be very clear, that the justices in the towns which were erected into the county of *Orleans*, ceased to be justices of the county of *Genesee*, to which those towns belonged at the time of their election. Residence within the county is indispensable to the jurisdiction of this class of magistrates; and the legislature, possessing the power of erecting new counties, from parts of counties already organized, necessarily have the right of separating one or more towns from the county to which they were originally attached, and as a consequence, of depriving the magistrates residing in those towns, of the jurisdiction which they originally possessed over the territory from which they have been separated.

The power of the legislature to erect new counties, has been exercised from the foundation of the government; and is expressly recognized in the 7th section of the first article of the amended constitution. The justices of such towns must, therefore, become magistrates of the new county to which they are attached, or lose their offices entirely. The mode of appointment to, and the tenure of their offices, is particularly specified in the 7th section of the 4th article of the constitution. It is there declared, "that every person appointed a justice of the peace, shall hold his office *for four years*, unless removed by the county court, for causes particularly assigned by the judges of the said court." It was the intention of the framers of the constitution, to make this important class of judicial officers, entirely independent during the period for which they were chosen. No authority was conferred upon the legislature, of interfering with them under any circumstances. They were made amenable for misconduct, not to the legislature, but to the judges of the county court, a co-ordinate branch of the domestic tribunal, from which they received their appointment. All direct control on the part of the legislature, being thus carefully guarded against.

in relation to these officers, it would be strange indeed, if the power of removing them from office at pleasure, should be found to belong to the legislature, as incident to their acknowledged power, of dividing old and erecting new counties. Every presumption is against it; and in expounding that part of the constitution, and those laws which are applicable to the subject, that rule of construction should be adopted which is least favorable to such a pretension.

It is contended that justices of the peace are strictly county officers, and that when separated from the county for which they were chosen, their powers must cease in that county, on account of their non-residence, and cannot exist in the new county to which they are attached, because they were not elected or chosen for that county. If, by county officers, be meant officers who possess some powers co-extensive with the county, it is conceded that justices of the peace are such. But according to that definition, the supervisors and constables of the different towns, are county officers also; and would, by the same argument, lose their offices whenever the towns to which they belonged were set off to a different county. The most important duties of the supervisors of each town, are as members of the board of supervisors, and relate to the county generally, and not to their respective towns. They settle and allow all accounts chargeable against the county, and determine what sum ought to be raised for defraying the public and contingent charges of the county. They determine each town's proportion of the county charges; and direct such sums to be raised, and issue their warrants to the different collectors for that purpose. They audit and allow the accounts of the county treasurer, and it is to them that the bond for the faithful performance of his duties is given. They receive conveyances of land for the use of the county; they superintend the county court house and jail, and direct such repairs as may be necessary.

A constable also, has the same right to execute process  in every town in the county, as in that in which he was

chosen, and where he resides. In this respect, his terri-
torial jurisdiction is co-extensive with that of the sheriff.
Yet it is conceded that supervisors and constables are town
officers. The territorial extent of jurisdiction, then, is not
a decisive test, to determine whether a particular office
is a town or county office.

Nor does it depend upon the mode of appointment.
Many considerations may render it expedient to confer the
power of appointing local officers upon bodies of men
not to be affected by the exercise of those powers ; and
by adverting to the debates in the convention upon that
part of the amended constitution which provides for the
appointment of justices of the peace, it will be perceived,
that the power of appointment was not conferred upon the
supervisors and judges of the county court, because jus-
tices were considered county officers. The principal ob-
jection made to the election of these magistrates by the
different towns, was, that deriving their offices from those
among whom their powers were principally to be exercis-
ed, it was apprehended that they would not be exercised
with impartiality and firmness. It was conceded that the
inhabitants of the different towns were principally inter-
ested in the character and qualifications of the magistrates
of their town ; that they were essentially local magistrates,
and that if it were not for the reason which has been ad-
verted to, their selection ought to be left to the different
towns. They are, undoubtedly, in the exercise of the
largest and most important part of their duties, practically
and substantially local officers. The respective towns
have a deep interest in the character and qualifications of
their own justices, and very little in those of the justices
of any other town.

I am also inclined to think, that by the act of *March
27th*, 1818, (*sess.* 41, *ch.* 60,) justices of the peace must
reside in the towns for which they were appointed. The
2d section of that act provides, " that it shall not be law-
ful to appoint any more than *four justices of the peace in
any town in this state.*" The object of the legislature was
not merely to prescribe a rule by which the aggregate

number of justices of each county should be limited. If it had been, a different phraseology would have been adopted. They would have said at once, that no more justices shall be appointed in any county, than at the rate of four for each town therein. This would have left it in the discretion of the appointing power, to apportion them among the towns, in such manner as they might deem expedient. Have they that discretion under this law? Can they locate all the justices in the county in one town? It cannot, I apprehend, admit of a question, that such appointments would be absolutely void, except as to the four first named. And why would they be void? Not because the law declares that it shall not be lawful to appoint *all the* justices for the county in one town; but because it enacts that no more *than four shall be* appointed in any town. Whether the excess be great or small is not material. Whatever it is, is a violation of the act, and void *pro tanto*. If there is any discretion upon this subject left to the appointing power, it is an unlimited discretion. The certificate of the supervisors and judges, which, by the act of *April 12th*, 1822, is directed to be filed in the county clerk's office, must, I apprehend, specify the town for which the respective individuals are appointed. Under the old constitution, when justices were appointed by the council of appointment, their commissions undoubtedly, subsequent to the act of 1818, specified the town for which they were appointed.

The object of the act was, not only to limit the aggregate number of justices, but to secure a proper distribution of them among the different towns. Four were supposed to be equal to the wants of the largest towns; and it was left to the discretion of the appointing power, whether they would appoint that number or less, where the circumstances of the town did not require so many.

If all the justices of one town should remove into the adjoining town, I apprehend their offices would be vacated. They would cease to be justices in the town for which they were appointed. If it is unlawful to appoint more than four justices for any one town, it would seem to fol-

low, that no one town can lawfully have more than four justices.

The article of the constitution, prescribing this mode of appointing these officers, recognizes the existing law limiting their number, and speaking of them as justices to be appointed in the different towns.

Although, therefore, their criminal and civil jurisdiction, for many purposes, is co-extensive with the county, yet the constitution and laws recognize them as attached to particular towns ; and the practical exercise of their powers is confined almost exclusively to the towns in which they reside. When, therefore, the circumstance of a town being separated from the county to which it formerly belonged, renders it necessary to determine, whether the magistrates of the town can retain their offices, in the new county to which their town is attached, I think we may consider them as substantially town officers, and as retaining their authority during the period prescribed by the constitution, in whatever county the legislature may be pleased to place their town.

The constitution says they shall hold their offices for four years. The law of 1818 says, according to what is deemed its just construction, that they shall hold them only in the town for which they were appointed. It would seem necessarily to follow, that they become magistrates of whatever county their towns are attached to. In the case of *M'Collum*, (1 *Cowen*, 550,) it was held that the legislature had power to enlarge or contract the territorial jurisdiction of justices of the peace. In that case, the county of *Wayne* had been erected from parts of *Ontario* and *Seneca* counties ; and the question before the court was, whether the magistrates in the towns of which the county was composed, who were chosen while those towns belonged to the counties of *Ontario* and *Seneca*, became justices of the peace in the new county of *Wayne*. The only distinction between that case and this, is, that there the act organizing the county of *Wayne*, declares " that every person who shall have been appointed a justice of the peace, in and for the counties of *Onta-*

ALBANY,
Feb. 1827.

The People
v.
Garey.

*rio* and *Seneca,* and who shall now reside within the county of *Wayne, shall, by virtue of this act,* be and remain a justice of the peace, in and for the county of *Wayne,* for the same time, and with the same powers and authority, in the town in which he shall reside within the county of *Wayne,* as he would have had in the counties of *Ontario* and *Seneca,* if this act had not been passed."

In the case now before the court, the election of new justices is directed ; and that the old justices shall hold their offices until the new appointments are made. But it is conceived that these different provisions do not essentially vary the two cases. It is not in the power of the legislature either to extend or shorten the duration of this office. They may enlarge or diminish the territory over which its powers are to be exercised. But the office itself exists independently of, and above them.

In the case at bar, all the towns composing the new county, were taken from the county of *Genesee* ; so that the justices of those towns, if they retain their offices, acquire no additional territorial jurisdiction ; nor do they become the magistrates of a people who had no voice in their election. The objection, therefore, which was urged with some plausibility in the *Wayne* county case, that magistrates were imposed upon the county, in whose election a portion of the county had no voice, does not apply here. But if it did, the decisive answer is this : that it is a condition imposed by the constitution itself, and not by the legislature, upon every new county, that the justices of the peace, in the towns of which it is composed, shall retain their jurisdiction, until the constitutional period of their offices shall expire. The power of the legislature to erect new counties is subject to this limitation. It must be exercised in subordination to the imperative provision of that instrument, that justices of the peace shall hold their offices for four years, unless removed for misconduct.

Before the amendment of our constitution, justices of the peace were appointed by, and held their offices during the pleasure of the council of appointment. The ef-

fect of transferring a town from one county to another, upon the magistrates of that town, never was drawn into discussion, at that time ; because from the tenure of the offices, and the character of the appointing power, there were no obstacles or objections to its exercise at any time. The fact, therefore, probably is, that new appointments were made, whenever new counties were created. And the offices being held at the pleasure of the appointing power, the exercise of that power could never be impeached by the party removed or superseded. There being no constitutional obstacle to the exercise of the appointing power, it is conceived also, that it may have been competent for the legislature to require that power to be exerted, whenever so important a change took place in the organization of the state, as that which was produced by the erection of a new county.

We are sensible of the difficulties which surround this question ; and it is probable many may exist, which have not been anticipated and answered by the court. But it seems to us there can be no mistake in the opinion which we have expressed, that it is not in the power of the legislature to shorten the constitutional term of a justice of the peace ; that the office must endure unless vacated by the act of the incumbent, for four years ; and that the only difficulty is in determining the territorial limits within which it is to be exercised. For the reasons which have been assigned, we think it must be the county in which the officer is placed under the new organization.

Judgment for the plaintiffs.