The County Commissioners of Hennepin County v. Jones et al.

THE COUNTY COMMISSIONERS OF HENNEPIN COUNTY

, *vs.*

JESSE G. JONES, *et al.*

Objections to the regularity of a judgment, because rendered for too large a sum, and because it includes costs not properly taxed, cannot be taken advantage of upon an appeal from the *judgment*, where no irregularity appears upon the judgment record.

Ch. 102, Sp. Laws of 1868, fixing the salary of the county treasurer of Hennepin county at $3,000 per annum, was properly applicable to the case of a county treasurer who came into office before said act was passed, and while by the general law the annual emoluments of his office would amount to a much larger sum.

Public offices in this state are mere agencies of the government, created for the benefit of the public, not for the benefit of the incumbent. Unless it is expressly forbidden by the constitution, their emoluments, when they are, as in this instance, prescribed by law, may be altered, increased, reduced, and regulated by law.

Neither public offices nor their emoluments are *rights or privileges secured* to any citizen of this state, within the meaning of section 2 of the bill of rights in the constitution of this state.

The official bond given by defendant Jones as county treasurer of Hennepin county, upon which this action is brought, was conditioned in accordance with the provisions of the statute, that the said Jones " shall, during his term of office, safely keep and faithfully pay over, according to law, all moneys which come into his hands," &c. *Held*, that the bond determines and defines the extent of said Jones' responsibility; his responsibility is not that of an ordinary bailee, but such as is imposed by the express terms of the condition of his bond, to wit, an *absolute* responsibility for all moneys coming into his hands as county treasurer. The fact that a portion of the moneys so coming into said Jones' hands as county treasurer was, without fault on his part, stolen from an iron safe

which had been furnished him by the county board, (the office which had been provided for him by said board having been burglariously entered in the night time, and said safe broken open) does not exonerate him from his absolute responsibility for the safe keeping and paying over of all the moneys coming into his hands as aforesaid.

Appeal by defendants from a judgment of the district court for Hennepin county, recovered upon the official bond of defendant Jones as treasurer of said county, the other defendants being his sureties.

The case is fully stated in the opinion of the court.

LOCHREN & MCNAIR, for Appellants.

D. A. SECOMBE, for Respondents.

*By the Court.*—BERRY, J.—We agree with plaintiff's counsel, that as there is no irregularity apparent upon the judgment record in this case, the defendants cannot upon this appeal from the *judgment* take advantage of the objections which they urge to its regularity, to-wit: that it is rendered for too large a sum, and includes costs not properly taxed. To reach these objections, they should have appealed from the order denying their motion to have the judgment set aside for the irregularities complained of. It is not improper to remark, however, that the objections to the sum for which judgment was rendered appear to us to be purely technical, and that if there is any error in the matter of costs it must be of little importance.

This action is brought under section 136, ch. 8, Gen. St., against the defendant Jones as principal, and his co-defendants as his sureties, upon his official bond as county treasurer of Hennepin county, to recover money collected and received by him as such county treasurer and belonging to said county,

The County Commissioners of Hennepin County v. Jones et al.

and which as it is alleged he neglects to pay into the county treasury.

The case presents two questions, the first of which arises out of the following state of facts :

On the 1st day of March, 1868, Jones became county treasurer of said county, and so continued until March 1st, 1870. The money sought to be recovered is a balance of the amount collected and received by him during his said term of office.

By an act of the legislature approved March 6th, 1868, (ch. 102, Sp. Laws 1868,) and which took effect from and after its passage, it is enacted as follows : "The treasurer of Hennepin county shall receive a yearly salary of three thousand dollars, which shall be in full compensation for his services and clerk hire, and all fees and percentages now or hereafter allowed by law for the collection of taxes, shall be by him collected and paid into the county treasury of said county and constitute a separate fund to be devoted in the first place to the payment of such salary, and the balance, if any, to be subject to the disposition of the county commissioners for county purposes." By the general law (sec. 150, ch. 8, Gen. St.) county treasurers are allowed for their services percentages on the amounts by them collected, &c. This general law which took effect August 1st, 1866, was in force at the time when defendant Jones entered upon his duties as county treasurer. It is unnecessary to refer to its provisions farther than to observe, that under the same, defendant Jones would be entitled to receive for his services something over $5,500, for the first year of his term, and something over $6,500, for the second year, instead of the sum of $3,000, for each of said years allowed by the act of 1868.

The first question to be considered, then, is, whether the act of 1868, is valid as applied to defendant Jones ; or, as it is stated by his counsel, "Was the defendant, Jesse G. Jones,

entitled to retain the fees and percentage allowed by law and collected by him, as compensation, or only a salary of $3,000 per year ?"

At the outset defendants' counsel makes the point, that the salary or emoluments attached to a public office cannot " be reduced during the incumbency of an officer, so as to affect his rights for the term upon which he has already entered." This point is expressly, and, as it seems to us, very properly, submitted without argument, as it is a point in regard to which there is very little room for difference of opinion, either upon principle or authority. Public offices in this state are mere agencies of the government, created for the benefit of the public, not for the benefit of the incumbent. Unless it is expressly forbidden by the constitution, their emoluments, when they are, as in this instance, prescribed by law, may be altered, increased, reduced, and regulated by law. Indeed the office itself, [emoluments and all] if created by law, as is the office in question in this case, may be discontinued or abolished by law. *Cooley's Con. Lim.* 276; *Conner vs. Mayor of New York*, 2 *Sandford*, 356; 5 *N. Y.* 385.

But the principal ground upon which defendant's counsel claims that the act of March 6th, 1868, is inoperative and void, is " that it singles out a particular person from a class of persons, and attempts to govern him by a law different from that which governs all other persons in like situation, in the state, and is   *   *   *   unequal or partial legislation." Without now stopping to inquire whether the principle thus relied on is accurately stated or not, it is enough to say that it has no application to this case. The principle referred to is one which rests upon a usual provision of bills of rights, and which in the constitution of this state reads as follows, viz.: " No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, un-

The County Commissioners of Hennepin County v. Jones et al.

less by the law of the land, or the judgment of his peers."
Now public offices in this state, being mere agencies of the
government, the incumbents having no property in the same as
against the government, and the emoluments thereof (in the
absence of express constitutional inhibition) being subject to
alteration, increase, reduction and regulation by law, (see au-
thorities *supra*) neither the offices themselves, nor their emol-
uments, are *rights. or privileges secured* to any citizen of the
state.

In the second place, the principle relied on is one which
applies to the citizen as such, not to a public officer as such
officer, that is to say as an *agent* of the government.    As such
agent he is, like other agents, under the control of his prin-
cipal, that is to say he is, in a case like this at bar, under
complete legislative control, it being for the government, as
for other principals, to determine what agencies it will employ,
and how it will control them.    *Cooley's Con. Lim.* 389—393.

The remaining question in this case arises upon the follow-
lowing state of facts :    On or about February 23d, 1869, the
room which had been furnished to the defendant Jones by the.
board of county commissioners as an office, and in which he
was required to transact his official business, was burglariously
entered in the night time, and the iron safe therein which had
been furnished to said Jones by said board in which to keep
the treasurer's books, and the moneys collected and received
by him as treasurer, was broken open, and the sum of
$1,836.52, which had been received by said Jones as said
treasurer, and by him deposited in said iron safe for safe-keep-
ing, stolen therefrom, without any fault on the part of said
Jones.    No part of the sum thus stolen having been recovered,
the question is whether Jones is responsible to the county for
the moneys thus stolen.    Sec. 126, ch. 8, Gen. Stat. provides
that every county treasurer shall give a bond " conditioned for

the safe-keeping and paying over, according to law, of all moneys which come into his hands," &c., and in this case the bond upon which this action is brought follows the statute, being conditioned that the defendant " Jones shall, during his term of office, safely keep and faithfully pay over, according to law, all moneys which come into his hands," &c. The bond, being such as the statute required the defendant Jones to execute, by its own terms defines and determines the extent of his responsibility. That responsibility is not such as the law imposes upon an ordinary bailee, but such as is imposed by the express terms of the condition of his official bond, a condition prescribed by statute. That condition is, in part, to *safely keep* all moneys coming into his hands as county treasurer, and we think its plain meaning and effect is to impose an absolute responsibility for such moneys. The fact that the money was deposited in and stolen from the safe, and from the office furnished by the county board, is not important. The county had the right to look to and rely upon the defendant's absolute and unconditional responsibility for the *safe-keeping* of the money, as imposed by the bond required by law. From this responsibility the county board had no authority to relieve the county treasurer, by furnishing a safe, or otherwise.

As we deduce the absolute responsibility of county treasurers for the safe keeping of the moneys coming into their hands solely from our own statute, we might stop here.

For the purpose, however, of showing how far the courts go in holding collectors and depositaries of public money responsible for the safe keeping of such money, and upon what grounds, we refer to a few cases, some of which are cited by defendants' counsel. In Inhabitants of Hancock vs. Hazzard, 12 Cushing 112, which was a case in which a collector of taxes was held liable for money received by him as collector which

had been stolen from him without his fault, the court say, " A collector of taxes by accepting the office takes the risk of the safe keeping of the money he has actually received.   His obligation is not regulated by the law of bailments, and the cases cited to that effect are inapplicable.   He is a debtor, an accountant bound to account for and pay over the money he has collected.   The loss of his money by theft, or otherwise, is no excuse for non-performance ; this is founded on the nature of his contract, and considerations of public policy."   In United States vs. Prescott, 3 Howard, 578, it was held that it is not a defence to an action on the official bond of a receiver of public moneys conditioned to keep safely the public moneys collected by him, that the money was feloniously stolen from his custody without his fault.   Mr. Justice McLean in delivering the opinion of the court says :  " This is not a case of bailment, and consequently the law of bailment does not apply to it.   The liability of the defendant Prescott arises out of his official bond, and principles which are founded upon public policy.   The conditions of the bond are that the said Prescott *      *      *      *      * shall well, truly and faithfully keep safely, without loaning or using, all the public moneys collected by him, or otherwise at any time placed in his possession and custody.      *      *      *      The condition of the bond has been broken, as the defendant failed to pay over the money received by him when required to do so, and the question is whether he shall be exonerated from the condition of his bond on the ground that the money has been stolen from him.   The objection to this defence is that it is not within the condition of the bond.      *      *      *      *      The obligation to keep safely the public money is absolute, without any condition, express or implied, and nothing but the payment of it when required can discharge the bond.      *      *      Public policy requires that every depositary of the public money should be

held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that he should 'keep safely' the moneys which come to his hands." This case of United States vs. Prescott is followed with approval in *United States vs. Morgan*, 11 *Howard* 160, as well as in *United States vs. Dashiel*, 4 *Wallace* 182.

The case of *Supervisors of Albany County vs. Dorr*, 25 *Wend.* 440, (1841) is cited by defendants' counsel, and certainly has some tendency to support his position. But upon appeal to the court of errors the decision of the supreme court in that case was affirmed only in consequence of an equal division of opinion among the members of the appellate court. 7 *Hill* 584 (1844.) The case of Muzzy vs. Shattuck, 1 Denio 233, (1845) in effect overrules the case cited from 25 Wendell, and such is the opinion of the learned reporter as expressed in the note to 7 Hill 584, where he adds that the judgment of the supreme court in Muzzy vs. Shattuck was unanimously affirmed in the court of errors. It is worthy of notice also, that Mr. Justice Nelson, who delivered the opinion of the court in Supervisors, &c. vs. Dorr, 25 Wendell, was a member of the supreme court of the United States when the decisions in U. S. vs. Prescott, and in U. S. vs. Morgan, were made, in which cases he does not appear to have dissented, and that he was the author of the opinion pronounced in U. S. vs. Dashiel. The fair presumption is, that upon mature reflection he was led to modify the views expressed by him in Supervisors, &c. vs. Dorr. The case of State vs. Harper, 6 Ohio State, 607, is also directly in point in the same direction.

Defendants' claim that these authorities are not applicable, because under our statute the county treasurer is but an ordinary bailee, while in the cases cited he is a debtor, cannot be supported. If the *charging* of the county treasurer with the amounts received by him possesses any special importance in

The County Commissioners of Hennepin County v. Jones et al.

giving him the character of debtor, as defendants appear to think it does in some of the cases cited, there is certainly enough in our statute in this respect to make him a debtor, rather than an ordinary bailee. *Secs.* 122, 136, *ch.* 8, *Gen. St.; secs.* 55, 61, *ch.* 11, *Gen. St.* Neither does it follow that because the funds in the hands of a county treasurer belong to the county, nor because he is prohibited from speculating in them or loaning or using them, [ch. 8 Gen. St., § 143, 144,] that, therefore, he is, as contended, a simple bailee of the county. In the case of U. S. vs. Prescott, in which it was held, as we have already seen, that Prescott's liability arose out of his *official bond,* and principles founded upon public policy, the conditions of the bond are that he should safely keep *without loaning or using,* &c. Yet the fact that Prescott was thus bound to refrain from speculating in or using in any way the funds received by him, did not give him the character of a simple bailee, or exonerate him from an absolute responsibility.

That the moneys received by the county treasurer as such, belong to the county, may be admitted. Certainly they do not belong to the county treasurer as against the county ; and if Coleraine vs. Bell, 9 Metcalf, 499 cited by defendants, lends any countenance to a contrary doctrine, we do not in this respect agree with it. The subsequent case of Inhabitants of Hancock vs. Hazzard, *supra,* although it cites Coleraine vs. Bell, does not appear to be based in any degree upon the idea that public moneys collected are the property of the collecting officer. Neither do the cases above cited from the supreme court of the United States.

The very words used in bonds of this kind, viz.: that the obligor shall *safely keep* the moneys, seem to carry the idea that the money is not his property, but the property of the body politic for which it is required to be safely kept. But the fact that the moneys received in this case belong to the

county, in no way lessens the degree of responsibility of de-
fendant Jones; nor has such fact any tendency to show that
his obligation is not absolute to safely keep the moneys coming
to his hands.

But we will not pursue this subject further. Enough, and
more than enough, has been said to show, that under the terms
of our statute, by the condition of his bond, and in accordance
with the analogies of adjudged cases, the liability of defendant
Jones is absolute and unconditional, and that he is responsible
for all the moneys which have come to his hands, notwith-
standing a part of them have been stolen from him without
his fault.

Judgment affirmed.