No. 6417.

LAFAYETTE FIRE INSURANCE COMPANY VS. HEIKE EIBEN REMMERS.

The Legislature can not change the judicial districts pending the existing terms of office of the district judges.

When a portion of one parish, situated in a certain judicial district, is annexed by the Legislature to another parish, situated in a different judicial district, it will become a part of the latter judicial district, on the expiration of the existing terms of office of the district judges, unless the Legislature shall otherwise provide.

APPEAL from the Fifth District Court, parish of Orleans.  *Cullom, J.*

*Hornor & Benedict,* for plaintiff and appellee.

*N. Commandeur* and *Merrick, Race & Foster,* for defendant.

The opinion of the court was delivered by

EGAN, J.  This suit is to enforce *via ordinaria* a mortgage and for personal judgment against the defendant, a resident of the Sixth Municipal District of New Orleans, where also is situated the mortgaged property. The defendant excepts to the jurisdiction of the Fifth District Court. It is urged *per contra* that he is subject to that jurisdiction both by reason of his domicile and the property mortgaged being situated in the parish of Orleans.  The Sixth Municipal District is part of that territory, formerly belonging to the parish of Jefferson, which was annexed to and made part of the parish of Orleans by act No. 71 of the Legislature, approved March 23, 1874, which specially provides that the territory so annexed " shall be and remain and constitute a part of the Second Judicial District of the State," of which the parish of Jefferson was a part at the time.   Our predecessors more than once held act No. 71 to be constitutional, and we are not prepared to depart from their conclusions, and there has been no subsequent inconsistent legislation.   So late as November last, in the case of Harrison vs. Carondelet-Street Railroad Company, Collins, Garnishee, Opinion Book 45, p. 584, they held that the garnishee, under judgment and *fieri facias,* who resided in Carrollton, was within the limits of the Second Judicial District of the State, and could not be called to answer before the Fifth District Court of New Orleans.

The present case forms no exception, as both the mortgaged property and the domicile of the defendant are within the jurisdiction of the Second Judicial District Court.  See C. P. 163.   There may be difficulties, and serious ones, in the way of carrying into effect all the details of the act referred to, but while these may well serve as a warning against legislation of this class when it can be avoided, we are not called upon in the present case to pass upon these questions, but only to announce

our opinion that the reservation of jurisdiction over the territory in question in the Second Judicial District Court is constitutional.

It is said that many and grave objections attach to legislation which divides parishes in the formation of judicial districts. This is, doubtless, true, but whether so or not, this was not done by the act in question, which only retained the judicial district as before. It might have been well had the Legislature thought proper to limit the duration of this provision to the expiration of the term of the then presiding judge, and thereafter subjected the territory annexed to the same jurisdiction as other parts of the parish of Orleans. They did not, however, do so, and we can not supply such provision to the act which, had it not reserved jurisdiction, might have been liable to much more serious objection.

The constitution empowers and directs the Legislature to divide the State into judicial districts, which shall remain unchanged for four years. It also provides, that " one judge, learned in the law, shall be elected for each district by the qualified electors thereof;" that " the judges of the district courts shall hold their offices for the term of four years, and that all officers shall continue to discharge the duties of their offices until their successors shall have been inducted into office, except in cases of impeachment or suspension." All civil officers are liable to be impeached or addressed out of office. By article 158 of the ordinance adopted with and to carry the constitution into effect, the terms of all officers chosen at the first election under it were to date from the first Monday of November, 1868, so that at the date of the act No. 71, annexing part of the Second Judicial District to the parish of Orleans, the term of office of the judge of that district had not expired, and had the Legislature not made the reservation of jurisdiction in question, the act might have been liable to serious constitutional difficulties, both on this account and by reason of the subjection of the electors in the annexed district to the jurisdiction of a judge not elected by them, and their being taken from the jurisdiction of the judge who *had been elected by them.*

In the case of the Commonwealth vs. Gamble, 62 Penn. Rep. pp. 352, 353, under a provision of the constitution of that State, in effect and almost in language similar to ours, that " the judges of the common pleas and other courts established by law, *shall* be elected by the electors of the respective districts of such courts," the court says: " It is obvious that this *secures* to the electors of every judicial district *the right* to choose their judges; and it is equally certain that if after an election the Legislature may transfer and make the district part of another district, when the inhabitants have had no participation, or chance of participation, in the election of a judge thus assigned to preside over them, that such an act would utterly ignore the provision of the consti-

tution which provides for the election of judges by the electors of the respective districts." And again: "If this may be done in this instance, it may be repeated." And so the territory and people might be transferred from time to time indefinitely, without ever exercising the right of participating in the election of a judge at all, "and all such legislation must be utterly void if the constitutional provision for the election of judges be of the slightest consequence."

The constitution of Illinois provided, "that the State shall be divided into nine judicial districts, in each of which one circuit judge shall be elected by the qualified voters thereof, who shall hold his office for the term of *six* years, and until his successor shall be commissioned and qualified; provided, the General Assembly may increase the number of circuits to meet the future exigencies of the State," and without any such provision as is contained in the constitution of Louisiana, that the districts, when created, "shall remain unchanged for four years," or for any other time. Ballou had been elected judge of one of the circuits of Illinois, and was commissioned and qualified as such on the thirty-first of March, 1857; subsequently an act of the General Assembly, approved on the eleventh of February, 1859, was passed, repealing the act creating the district of which Ballou was judge, and establishing in its stead the twenty-third judicial circuit. Under this latter act another judge, Bangs, was elected and commissioned and proceeded to act, and the court says (23 Ill. p. 550): "The question is, can the Legislature expel a circuit judge from his office by creating a new district and taking from him the territory which constituted his district? The bare reading of the constitution must convince any one that it intended to prohibit such a proceeding. It was the intention of that instrument to place the judges entirely above and beyond legislative control or interference, except by impeachment or address, as provided for in the twelfth section of the fifth article. *It is the constitution* which creates *the office of circuit judge, and not the Legislature.*" Again, in the same case, the court says: "It is unnecessary now to say whether the Legislature may, under the constitution, reduce the number of judicial districts by abolishing one and attaching its territory to others. *If it may, then, no doubt, the office would cease upon the expiration of the term of the judge of such district, but till the expiration of his term* if he conduct himself properly and does not become disqualified, *the constitution has not provided, nor has it authorized any mode of expelling him from the office* which is created by the constitution, and which he holds under the constitution." In other words, such reduction of the number of districts and attaching the territory of one to others, could only take place or go into effect at the close of the term of the judge of the district abolished. *A fortiori*, then, would this seem to be true under the constitution of Louisiana, which not only fixes the

term of office of the judge at four years, but provides that the districts shall remain unchanged for four years. These provisions should be read together and interpreted in harmony.

In 1 Cow. 564, it was held the justices of the peace held their offices for four years, and were not liable to removal before the end of that term, and that though county officers, and limited in jurisdiction to their counties, and in case they are cut off into a new county, which may be done, they are not thereby removed from office, but must be justices of the new county, and that an act of the Legislature providing for the continuance in office of justices residing in towns taken from Ontario and Seneca, now constituting the county of Wayne, is constitutional, and shall stand and be enforced.

In 6 Cow. 646, the same doctrine is reaffirmed, and while the power to create new counties is recognized, it is held to be subordinate to the provision fixing the term of office of justices of the peace at four years, unless removed in the manner provided by the constitution. The court says: "It was the intention of the framers of the constitution to make this important class of judicial officers entirely independent during the period for which they were chosen. And it would be strange, indeed, if the power of removing them from office at pleasure should be found to belong to the Legislature as incident to their acknowledged power of dividing old and erecting new counties (for which read 'districts'), and the power of the Legislature to erect new counties must be exercised in subordination to the imperative provision of the constitution that justices of the peace shall hold their offices for four years, unless removed for misconduct." What can not be done directly can not be done indirectly by the exercise of the power to create new counties. 9 Cow. 640, reaffirms the principles of the two former cases in 1 and 6 Cow.

These decisions are entitled to all the more consideration because coming from New York, a pioneer State in introducing the system of elective judiciary, and from judges whose learning and ability have secured for their decisions respectful attention and authority wherever they are read. Did time serve we might show that the same or similar views have been announced by the courts of other States and by other tribunals of the highest authority. In our own State we are not unaware that in the abnormal, and, we might almost say, revolutionary condition which has prevailed for several years, there has been much loose and improvident legislation affecting these questions which is liable to serious objection, and has been fraught with great inconvenience. While we do not propose to press our inquiries or decision beyond what we deem appropriate to the occasion and the case at bar, we can not avoid expressing the hope that these bad precedents, the outgrowth of disjointed times, may not be followed in future.

Lafayette Fire Insurance Company vs. Remmers.

It has often been held here as elsewhere, and is the recognized doctrine of the law in Louisiana, that what can not be done directly can not be done indirectly. In the case of Downes vs. Towne, 21 An. 490, the court held that "the Legislature had no power to legislate a judge or constitutional officer out of office, or to diminish or increase the term of office as fixed in the constitution." In the case of the State ex rel. Robinson vs. Dranguet, 23 An. 784, the court says that "time and reflection have only strengthened the conviction expressed in Downes vs. Towne." The court decided the case of the State ex rel. Collens vs. Clinton, Auditor, 26 An. 406, under the special provisions of the constitution for the parish of Orleans, and so expressly stated, and the court was divided. Without being called upon to give our assent to that decision, it is enough to say that it does not therefore and was not intended to vary the rule announced in the two former cases of Downs and Robinson just quoted. We have been referred to other cases than the one quoted by us, which, however, is the most recent decided by the late court where the effect of act seventy-one of 1874 was considered. Only one of them, the State vs. Daniel, can be considered as militating in any degree against the effect of the reservation of jurisdiction in the Second Judicial District. It was peculiar and exceptional, and related entirely to the composition of the juries; but, at all events, so far as in conflict with the views hereinbefore expressed, may be considered as overruled by the later case of Harrison, Collens, garnishee, before quoted, and must yield to the weight of authority.

It must be understood that we are not questioning the right and power of the Legislature to create new parishes and to abolish old ones, for though more or less difficulty attends the exercise of such power, it has always existed and been exercised in this as well as the other States of the Union. We are simply showing why it was both constitutional and proper for the Legislature while annexing part of the parish of Jefferson to the parish of Orleans to reserve and retain the jurisdiction of the Second Judicial District Court to which it belonged over the territory so annexed. Had it been the pleasure of the Legislature, we have no doubt they might have made that reservation last only during the term of the then judge of that district, and such seems to have been the practice formerly in legislation of this character. This, however, was not done, and what was done was constitutional, and must be so held and decreed by us.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be annulled, avoided, and reversed ; that the exception of the defendant to the jurisdiction of the Fifth District Court of the parish of Orleans be sustained and the suit dismissed, plaintiffs paying costs of both courts.

Since rendering the decree in this case it has come to our knowledge that the court was in error of fact in considering the residence of the defendant and the *situs* of the mortgaged property to be within the territory annexed to the parish of Orleans by act seventy-one of 1874. The court of its own motion ordered a rehearing of this cause that the judgment may conform to the facts while adhering to the principles announced in the opinion accompanying the former decree. Both the residence and mortgaged property of defendant are in the Sixth Municipal District of New Orleans, which was formerly the city of Jefferson, and was annexed to and made part of the parish of Orleans by act No. 7 called session of 1870, instead of act No. 71 of 1874. We have already announced our opinion that it is competent for the Legislature to change the boundaries of parishes (though not of judicial districts) at any time. It therefore resulted from the principles of the opinion heretofore read in this case that the Sixth Municipal District being part of the parish of Orleans had already become subject to the jurisdiction of the district courts of New Orleans prior to act forty-five of 1876, and that the attempt at that time to make it part of the Second Judicial District was in direct violation of the constitution.

The practical and legal difficulties in the way of dividing a parish in the formation of a judicial district forbid our sanctioning such legislation. They have been well remarked upon by the judge *a quo*, and become more apparent in this instance in view of the provisions of the second and third sections of this act which provides for the election by *part* of the voters of the parish of Orleans—those of the Sixth and Seventh Municipal Districts—of a clerk whose election by the qualified electors of the whole parish is provided for by the eighty-third article of the constitution. The anomaly of having the sheriff, who is also a parish officer, act as the executive officer of a court having jurisdiction outside of its limits, and the difficulty in the composition of juries, have been sufficiently illustrated in the case of the State vs. Daniel, Opinion Book 44, p. 649. The exception of the defendant to the jurisdiction of the Fifth District Court of the parish of Orleans was properly overruled.

On the merits, we think the evidence sustains the judgment of the court below, which is therefore affirmed with costs of both courts.

## ON REHEARING.

The opinion of the court was delivered by

MARR, J. This suit was brought in the Fifth District Court for the parish of Orleans on the seventh of April, 1876, on a promissory note, and to enforce the mortgage given to secure its payment, and final judg-

ment was rendered against defendant, which was signed on the twenty-fifth of June, 1876. Defendant lived in the Sixth Municipal District of the city of New Orleans, and the property mortgaged was situated in that district. The only question is as to the jurisdiction of the court.

The Sixth Municipal District was formerly the city of Jefferson, in the parish of Jefferson, part of the Second Judicial District, which was composed of the parishes of Jefferson, St. Bernard, and' Plaquemines. By act No. 7 of the extra session of 1870, approved sixteenth of March, the limits of the parish of Orleans were extended to the lower line of the city of Carrollton, and that portion of the parish of Jefferson within the new boundary, including the city of Jefferson, was detached from the parish of Jefferson, annexed to the parish of Orleans, and incorporated in the city of New Orleans as the Sixth Municipal District.

This act is silent as to the jurisdiction to which the territory and the inhabitants thus detached from the parish of Jefferson and annexed to the parish of Orleans should be subject, and if no law otherwise provided the jurisdiction of the courts of the parish of Orleans the First Judicial District would necessarily have extended to all the inhabitants and to all the territory included within and constituting part of the parish of Orleans.

By act No. 71 of 1874, approved twenty-third of March, the city of Carrollton was detached from the parish of Jefferson and annexed to the parish of Orleans as the Seventh Municipal District of the city of New Orleans. The second section of this act provides that the portion of the territory of the parish of Jefferson thus detached and annexed to the parish of Orleans "shall be and remain and constitute part of the Second Judicial District of the State."

In 1876, by act No. 45, approved eighteenth of March, the limits of the Second Judicial District were defined and extended so as to include the Sixth and Seventh Districts of the parish of Orleans, which, with the parishes of Jefferson, St. Bernard, and Plaquemines, were declared to compose the Second Judicial District.

The sessions of the Second Judicial District Court for the Sixth and Seventh Districts were to be held at the court-house in the Seventh District, and this court was declared to have exclusive civil jurisdiction in all cases except matters of probate, when the amount involved exceeds one hundred dollars, and unlimited exclusive jurisdiction in criminal cases. The act goes on to provide for the election of a clerk for this court by the qualified voters of the Sixth and Seventh Districts at the next general election, for the term of four years. The sheriffs of the parish of Orleans were to be the executive officers of the court, the civil sheriff in civil matters and the criminal sheriff in criminal matters.

The jurors were to be drawn by the jury commissioners of the parish

of Orleans from the entire number of registered voters of the Sixth and Seventh Districts. The residents of these districts were declared to be exempt from jury duty in the other courts for the parish of Orleans, and persons residing in other districts were exempt from jury duty in that court.

No one questions the power of the Legislature to change the limits of the parishes, and to detach a portion of one parish and annex it to another parish, but the constitution imposes certain restrictions upon the power of the Legislature to change the judicial districts. The city of Jefferson and the city of Carrollton are no longer parts of the parish of Jefferson, and they are both components of the parish of Orleans. The question is whether they are subject to the jurisdiction of the courts of the First Judicial District, which is composed of the parish of Orleans alone, or to that of the court of the Second Judicial District, as defined by the act of 1876.

The constitutions of 1812, 1852, and 1864 are silent as to the power of the Legislature to change the judicial districts, and it would be to no purpose to inquire what was the practice under these several organic laws. By the constitution of 1845, article seventy-five, the first Legislature assembled under it was required to divide the State into judicial districts, " which shall remain unchanged for six years, and be subject to reorganization every sixth year thereafter." The number of districts to be not less than twelve nor more than twenty, and the term of office of the district judges was fixed at six years. Article seventy-seven.

The constitution of 1868, article eighty-three, provides that " the General Assembly shall divide the State into judicial districts, which shall remain unchanged for four years." The number of districts was to be not less than twelve nor more than twenty, and the district judges were made elective by the people at the general elections for the term of four years.

Although the terms are different, it is obvious that the constitution of 1868 means, as that of 1845 intended, that the Legislature shall not have power to change the judicial districts during the term of office of the judges, and if no other reason justifies this restriction, it is necessary in order to preserve the independence of the judiciary by placing it out of the power of the Legislature to deprive a judge of his office by abolishing his district before the expiration of his term. The authority of the Legislature to establish new districts, as was done in 1870, 1871, and 1874, and to confer upon the Governor the power to appoint the judges, to hold until the next ensuing general election, may well be questioned.

It will be observed that the act of 1874, by which the city of Carrollton ceased to be part of the parish of Jefferson and became part of the parish of Orleans, guarded against any infraction of the constitutional restriction by continuing it under the jurisdiction of the Second Judicial

District, to which it had belonged for years, and this feature of the act may be taken as the expression of the opinion of the Legislature that the territory might be detached from the parish of Jefferson and annexed to the parish of Orleans at any time, but that it could not be immediately detached from the Second Judicial District.

The Second Judicial District, composed of the parishes of Jefferson, St. Bernard, and Plaquemines, was established by the act of 1860, and it existed as then established at the time of the adoption of the constitution of 1868, which recognized and continued in force all laws not inconsistent with it, or not specially excepted. Article 149.

When the city of Jefferson was detached from the parish of Jefferson and annexed to the parish of Orleans, it would have ceased to be a part of the Second Judicial District, because it was no longer a part of the parish of Jefferson, but for the effect of article eighty-three of the constitution, which requires judicial districts to remain unchanged for four years. The act of 1870, No. 7, can not be considered as violative of the constitution in this respect, because it says nothing touching any change of the jurisdiction to which the detached territory had belonged. The act simply extends the limits of the parish of Orleans so as to include the city of Jefferson, and amends the charter of the city of New Orleans. That part of the act which made the city of Jefferson part of the parish of Orleans took effect from and after its passage. If the change of jurisdiction which would otherwise have taken place immediately was prevented by article eighty-three of the constitution, a point which we do not now decide, because it is not properly before us, this effect would only be suspended until the expiration of the four years, that is, until the next ensuing general election, in November, 1872, when the term of the judges of the district courts expired, and we entertain no doubt that from and after that date the city of Jefferson and its inhabitants fell within the jurisdiction of the courts for the parish of Orleans, simply because the territory was a part of the parish of Orleans, and no law otherwise provided, no clause or feature of the constitution, prohibited this legitimate effect and consequence. There is no room for reasonable doubt or question that from and after the general election of November, 1872, up to the passage of the act No. 45 of 1876, suit might have been brought in the Fifth District Court for the parish of Orleans against a resident of the Sixth Municipal District for any cause of action falling within the competency of the court *ratione materiæ.*

This act of 1876 must be so interpreted as to have effect and to be consistent with the power of the Legislature, if such interpretation be legally possible. The Legislature seems, by the terms of the act, to have designed to leave the Sixth and Seventh Districts in the condition in which they were at the time of its passage until the next ensuing general elec-

tion in November, 1876. There could be no court without a clerk. This act undertakes to establish a court, but it makes no provision for the appointment of a clerk until the next general election, when a clerk was to be elected by the qualified voters of the two districts for the term of four years, the constitutional term. ·

By the act of 1874, as we have seen, the city of Carrollton continued to be part of the Second Judicial District; and just there the act of 1876 left it. If the constitution, article eighty-three, prohibited the transfer of this territory to another district before the expiration of the term of office of the judge, these two acts do homage to that article, so far as the Seventh District, the city of Carrollton, is concerned. And if the effect of this act of 1876 was to be suspended until the next ensuing election, the Sixth District would have continued to be part of the First Judicial District, under the jurisdiction of the courts for the parish of Orleans, and the Seventh District would have continued to be a part of the Second Judicial District.

If these views be correct, the city of Jefferson, the Sixth Municipal District, was part of the First Judicial District in November, 1872, and so continued to be until November, 1876. The Fifth District Court for the parish of Orleans had complete jurisdiction of the person and property of defendant, and there is no error in the judgment appealed from.

It is not necessary for us to decide, we desire to be understood as not deciding, whether the courts for the parish of Orleans had jurisdiction over the inhabitants of the Sixth Municipal District prior to November, 1872, nor do we decide, because it is not necessary to decide, in this case, whether the act No. 45 of 1876 is constitutional. It is plainly susceptible of the interpretation which we have given it, that is, that its effect was suspended until November, 1876, as to the Sixth Municipal District; and, as thus interpreted, it is wholly inapplicable to the case before us, without effect upon the rights of the parties to this suit. This interpretation we are bound to adopt *ut res magis voleat quam pereat.*

It is not necessary to express any opinion now as to the force and effect of this act from and after November, 1876, but we may add that the Legislature of 1877, by act No. 85, has repealed it, and transferred the Sixth and Seventh Districts to the jurisdiction of the First Judicial District, to take effect from and after the expiration of the present term of the judge of the Second Judicial District.

We are satisfied that the decree herein rendered on the thirtieth of April, 1877, is correct, and it remains unchanged.

Lafayette Fire Insurance Company vs. Remmers.

### CONCURRING OPINION.

EGAN, J.   The parish of Orleans was made by law the First Judicial District of the State.   If, then, the limits of the parish of Orleans are *increased* or *diminished,* the territory annexed to the parish is thereby annexed to the First Judicial District, or that taken away and *added* to another parish, which is at the time part of another judicial district, becomes thereby part of that other judicial district.   The only limitation is as to the *time* when such act can have such legal effect, owing to the restrictions of the constitution growing out of the term of office · of judges, and the term of duration of judicial districts; and as the Legislature can not be supposed to have intended to pass an unconstitutional act, it must be interpreted as we said in the former opinion in this case, and as was said in the Twenty-third Illinois case, in subordination to the provisions of the constitution, articles eighty-three and eighty-four, referred to.   On the other hand, where by legislative enactment *territory* is annexed to a parish which *forms either the whole or part* of another judicial district, it must be held that the Legislature intended, by annexation of the territory to the parish, to annex it to the judicial district in which the parish lies to which the territory is added.   No other is a reasonable conclusion, and such, we think, is the necessary legal effect of such legislation, and we must hold that the Legislature so intended.   We know of no rule of interpretation which requires us to understand or interpret legislation on this subject otherwise than we would in another, *i. e.,* that the Legislature intended by the act of annexation to the parish to change it to the district in which is the parish of which it is made part, and take it away from the district of which the parish from which it is taken made a part.   As we before said, however, this is done subject to the limitations named, and while for merely municipal purposes the jurisdiction of the parish to which the territory is added attaches so soon as the act goes into operation, the other effect of changing the judicial district is postponed, as we held in the former opinion, till the close of · the term of the judge presiding at the time of the annexation.   The Legislature can as well change the limits of a judicial district by passing an act which has that necessary legal effect as by using the precise terms and declaring that such was their intention.   This is what was meant in our former opinion in this case.

I concur in the decree and opinion of Mr. Justice Marr in the rehearing of this case.