MARDEN v. PORTSMOUTH.

An election to and acceptance of a public office, at a fixed salary, does not create a contract so that the salary cannot be changed during the term of such election.

City councils have the power to change the salary of any officer elected by them, or by the mayor and aldermen.

ASSUMPSIT. Facts found by a referee.
The plaintiff was elected city marshal of Portsmouth, Oct. 2, 1874. At that time the city marshal received an annnal salary of

$800, and his fees as a witness in the police court in all cases where the city were a party or interested.   October 9, 1874, an ordinance of the city fixed the salary at $700, and required all fees and costs allowed him in the police court, including his costs as a witness in criminal cases and in any other case in which the city might be a party or interested, to be paid to the city.   The plaintiff held the office until Oct. 28, 1875, when he was reëlected, and continued to hold the office until Aug. 4, 1876.   The question was reserved whether he was entitled to recover at the rate of compensation fixed when he was elected and accepted, or at the rate fixed by the ordinance of Oct. 9, 1874.

*Frink*, for the plaintiff, contended that the election and acceptance of the plaintiff constituted a contract,—citing *Caverly* v. *Lowell*, 1 Allen 291, *Chase* v. *Lowell*, 7 Gray 35, *Cox* v. *Burlington*, 43 Iowa 612; that if a contract, the conduct of the city councils was repugnant to the bill of rights,—citing Art. 23, *Kent* v. *Gray*, 53 N. H. 576, and *Spaulding* v. *Andover*, 54 N. H. 56.

*Foster*, for the defendants.

STANLEY, J.   The city councils were by law vested with all the powers of towns—Gen. St., c. 44, s. 1; and among these powers was that of fixing the compensation of police officers.   Gen. St., c. 44, s. 2; c. 235, s. 6.   The plaintiff was city marshal, and, by virture of his office, a police officer.   Gen. St., c. 43, s. 7.   This being the case, he was only entitled to recover such compensation as was fixed by the city councils.   The acceptance of the office was under the implied condition that the city councils might change the salary at any time.   There is nothing in the statute which conflicts with this idea;—on the contrary, the fact that there is a special provision " that the salary of the mayor shall not be increased or diminished from the time of any election until the close of the term,"—Gen. St., c. 41, s. 11,—according to the maxim " that the express mention of one thing implies the exclusion of another," is evidence of the understanding of the legislature that the election to office and its acceptance does not preclude the proper authority from changing the compensation attached to any office, in the absence of any provision of the constitution or the statutes to the contrary.

The plaintiff contends that his election and acceptance, at a fixed salary, created a contract, which could not be changed without his consent.   Whether this position is correct we need not decide; but it might be urged in answer to it that the plaintiff's election and acceptance lack the element of mutuality necessary to make a valid contract.   He could not have been compelled to serve, and no action could have been maintained against him if he had refused to serve or had resigned at any time.   Contracts relate to property and property rights.   An office is neither.   It cannot be purchased,

or sold, or encumbered, within the ordinary meaning of those terms. The office of city marshal was a public office, created for the preservation of the public peace, and not to subserve private ends. By virtue of his office he was a conservator of the peace. Gen. St., *c.* 43, *s.* 7. Offices are not incorporeal hereditaments, nor have they the quality of grants. They are rather agencies for the accomplishment of particular objects. They are created for the benefit of the public, and not for the benefit of the incumbent. Their tenure is fixed with a view to the public convenience, and not to confer the emoluments during their term on the office-holder. The prospective salary and emoluments are not property in any sense. They more nearly resemble daily wages unearned, and which may never be earned because the incumbent may die, resign, be removed, or superseded, and his place filled by another; or, the office may be abolished. If the election or appointment to and acceptance of an office constitute a contract which cannot be modified or annulled, then it is beyond the power of the legislature to repeal or modify any statute creating an office, which shall be effectual during the incumbency of the person then in it. It is enough to say that this view has not been adopted by the legislature, and is not in accordance with the law.

It may not be easy to distinguish this case in principle from that where a person pays the fee and obtains a license to carry on a particular business for a specified time. In such cases it is held that there is nothing in the nature of a contract conferring a vested right such as is protected by the constitution of the United States, and that such license is revoked and annulled by the repeal of the statute before the expiration of the time limited in the license. *State* v. *Holmes*, 38 N. H. 225; *Baxter* v. *Pennsylvania*, 10 How. 416; *Calder* v. *Kurby*, 5 Gray 597; and if the office may be abolished and the right to receive any compensation thus be revoked and annulled, it may be difficult to explain upon what principle it is that the amount of compensation cannot be changed. *Smith* v. *Mayor*, 37 N. Y. 518; *Conner* v. *Mayor*, 5 N. Y. 285, 295; *People* v. *Garey*, 6 Cow. 642; *Warner* v. *People*, 2 Denio 272, 292—S. C., 7 Hill 81; *Wilcox* v. *Rodman*, 46 Mo. 322; *State* v. *Douglas*, 26 Wis. 428; *Comm'rs* v. *Jones*, 18 Minn. 199; *Trustees* v. *Woodward*, 4 Wheat. 518, 626.

In *Rindge* v. *Lamb*, 58 N. H. 278, it was held that a selectman was not entitled to more compensation than he agreed with the town to take. The questions, whether if the town had voted to pay the selectmen a particular sum they could have rescinded that voted and voted a less sum, or whether if they had voted not to pay them anything for their services they could have recovered anything—Dillon Munic. Cor., *ss.* 168, 169, 170; *Farnsworth* v. *Melrose*, 122 Mass. 268; *Sikes* v. *Hatfield*, 13 Gray 347; *Sawyer* v. *The Pawners' Bank*, 6 Allen 207, 209; *Boyden* v. *Brookline*, 8 Vt. 284—were not raised or considered.

Our conclusion is, that the plaintiff is entitled to pay at the rate of $800 per year from his election, Oct. 2, 1874, to the passage of the ordinance of Oct. 9, 1874, and his witness fees in suits or prosecutions where the city were a party or interested during that time, and after that at the rate of $700 per year in full for salary and witness fees.

*Case discharged.*

ALLEN, J., did not sit: the others concurred.