The State ex rel. Martin vs. Kalb, County Treasurer, and another.

*September 2 — September 21, 1880.*

Constitutional Law:   *Changing compensation of public officer during his term.*

An act of the legislature creating a county court of limited civil and criminal jurisdiction, and fixing the salary of the judge, payable out of the county treasury, may be amended so as to change the salary of the judge of such court during the term for which he has been elected; and the constitutional provision which forbids the "compensation of any public officer" to be "increased or diminished during his term of office" (Const., art. IV, sec. 26), is inapplicable to such a case.   *Board of Supervisors v. Hackett*, 21 Wis., 613.

The State ex rel. Martin vs. Kalb, County Treasurer, and another.

APPEAL from the Circuit Court for *Brown* County.

The case is thus stated by Mr. Justice TAYLOR:

" By chapter 9, Laws of 1875, a court of limited civil and criminal jurisdiction was created in the county of Brown, designated 'the second county court for Brown county.' The act provided for the election of a judge of said court, who should hold his office for the term of six years from the first day of January, 1876. It also provided that whenever a vacancy should occur in the office of the county judge then in office as judge of probate, the business pending in such county court should be transferred to the court created by said act, and thereafter such second county court should be known as the county court of said county of Brown, and have jurisdiction also of all matters of probate in as ample a manner as the other county judges or county courts of the state have in such matters. The act fixed the salary of the judge of said court at $3,000 per annum, and further provided that when the court should become the county court of said county, with probate jurisdiction, the salary should thereafter be the sum of $3,500 per annum.

" In 1877, the then judge of the county court of said county died, and under the provisions of said act the judge of 'the second county court for Brown county' assumed and performed the duties of the county judge in probate matters, as well as the civil and criminal jurisdiction conferred by said act, and thereafter received the salary of $3,500. By the Revised Statutes of 1878, the act creating said court was repealed; but the jurisdiction conferred upon the judge of said court was conferred upon the county court of Brown county to the same extent as by the law of 1875 (see section 2465, R. S. 1878), and the salary of the judge of said county court was fixed at $3,500, which was to be in full for all the services of such judge in any capacity, except as court commissioner. See section 2482, R. S. 1878. In 1879, the legislature, by chapter 31 of that session, repealed so much of the Revised

The State ex rel. Martin vs. Kalb, County Treasurer, and another.

Statutes of 1878 as conferred civil and criminal jurisdiction on the county court of Brown county, and reduced the salary of the judge of said county court to $1,500 per annum.

" *Morgan L. Martin*, the relator in this action, was elected judge of the second county court for Brown county in April, 1875, under the provisions of chapter 9, Laws of 1875, and entered upon the duties of his office as judge of said second county court; and after the death of the then county judge he entered upon the duties of county judge of said county as judge of probate, and is now in the exercise of the duties of the office of county judge of said county. The object of this action is to compel the payment to the relator of the salary of $3,500, as fixed by the law of 1877 and by section 2465, R. S. 1878. The county has paid the salary of said relator at the rate of $1,500 per annum since the *25th day of February*, 1879, when the repealing act of 1879 took effect, which reduced the salary of said judge to $1,500."

Plaintiff appealed from an order sustaining a demurrer to the relation.

The cause was submitted for the appellant on briefs of *Vroman & Sale* as attorneys, and *Norris & Ellis* of counsel. They contended that every county judge with probate jurisdiction is a constitutional public officer, whose salary cannot be increased or diminished during his term of office. It has always been not only the policy but one of the declared purposes and objects of the law, to maintain an independent judiciary by guarding the judges' salaries against diminution during their continuance in office. Provisions for securing this end are found in the constitutions of every state in the union. See *Commonwealth v. Gamble*, 62 Pa. St., 345. In this state the prohibition of legislative interference extends to the compensation of all public officers. Const., art. IV, sec. 26. The language of this section is used in a general sense, and was intended to refer to all such offices as are for the benefit of the general public. In this sense, county judges are public officers. Their

courts are courts of record, with jurisdiction coëxtensive with the state. Their services are as much for the benefit of the general public as are those of the judges of the supreme or circuit courts. The three courts are part of a single system constituting the judicial department of the state. And the salary of county judges is paid out of the public revenues raised by taxation in the ordinary way. This case is not ruled by *Supervisors v. Hackett*, 21 Wis., 613. The real point decided in that case was, that sec. 26, art. IV of the constitution, " does not and was not intended to apply to the remuneration of that large class of officers, such as sheriffs, constables, clerks of courts and others, who receive specific fees for specific services as they are from time to time required to render them." This principle is certainly not decisive of the question whether a county judge whose salary is fixed by law, is or is not protected in his right to the full salary by the constitutional provision referred to. The decision in *Hall v. State*, 39 Wis., 79, related only to offices created by the legislature, and not to the constitutional office here in question. Under the provisions of the act of 1875, the relator, when the vacancy occurred in 1877, became the county judge of Brown county, with probate powers and jurisdiction. The revision of 1878, while repealing the act of 1875, again defined the jurisdiction of such court, and fixed the salary of the judge thereof. Secs. 2465, 2482. The legislature had thereafter no more power to alter the salary of the relator, during the term for which he was elected, than it had to abolish the constitutional office which he held. It might relieve the judge of a part of his duties, or it might add to such duties; but his salary was protected by the constitutional guaranty. The relator, having performed all the duties of his office up to this time, has a vested right to the salary fixed by law, of which no act of the legislature can deprive him. *State ex rel. Register v. Auditor*, 33 Mo., 287; 5 Watts & S., 403; 6 Bush, 1; 9 id., 7.

For the respondent there was a brief by *J. C. & A. C. Ne-*

*ville,* and oral argument by *J. C. Neville.* They contended, *inter alia,* that the legislature had power to reduce the salary of the judge, fixed by the act of 1875. The court as organized under that act was wholly the creature of legislative power. "When an office is created by statute, it is wholly within the control of the legislature. The term, the mode of appointment and the compensation may be altered at pleasure, and the latter may be even taken away without abolishing the office." *People v. Haskell,* 5 Cal., 357; *People v. Banvard,* 27 id., 470; *In re Bulger,* 45 id., 553; *State ex rel. Voight v. Hoeflinger,* 31 Wis., 257; *Hall v. State,* 39 id., 79; *Co. Com. v. Jones,* 18 Minn., 199; *Taft v. Adams,* 3 Gray, 126; Cooley on Con. Lim., 276 and note 2; *Butler v. Comm.,* 10 How. (U. S.), 402; *Conner v. New York,* 2 Sandf., 355; *S. C.,* 5 N. Y., 285; *People v. Warner,* 7 Hill, 81; 2 Denio, 272; *State and De Guenther v. Douglas,* 26 Wis., 428. The emoluments or salary of a public officer are not property, and may be increased or diminished by law at all times, except when the constitution has forbidden it, or provided otherwise. *Andrews v. U. S.,* 2 Story, 202; *Comm. v. Burrell,* 7 Barr, 34; *People v. Devlin,* 33 N. Y., 269; *Conner v. Mayor,* 1 Seld., 285; *State ex rel. Ryan v. Boyd,* 21 Wis., 208. The creation of the office and the election of the relator thereto did not create a contract whose obligation the legislature could not impair. It was not upon any condition or consideration; there was no obligation upon the relator to accept the office; and he might resign it at any time without incurring any liability whatever. *Dartmouth College v. Woodward,* 4 Wheat., 539; *Hall v. State,* 39 Wis., 79; *State v. Douglas,* 26 id., 431; *Chapin v. Crusen,* 31 id., 209; *Prop. of Charles River Bridge Co. v. Warren Bridge,* 11 Pet., 420. The salary of the relator not being payable from the treasury of the state, he was not a public officer within the meaning of sec. 26, art. IV of the constitution. *Supervisors v. Hackett,* 21 Wis., 615.

TAYLOR, J. It is insisted by the learned counsel for the appellant, that the legislature has no power to reduce the salary of the relator during his term of office, and that he is entitled to receive the salary fixed by the legislature at the time of his election, and when he entered upon the duties of his office. This claim is based upon the last clause of section 26, art. IV of the constitution, which reads as follows: "Nor shall the compensation of any public officer be increased or diminished during his term of office."

It will be seen, by an examination of the constitution, that neither the term of office nor the compensation to be paid to county judges, or judges of inferior courts, are fixed by the constitution. It is not seriously contended that the legislature would not have the power to change both the term of office and the compensation of the county judges, were it not for the provision above quoted. It is well settled that, in the absence of any constitutional prohibitions or affirmative provisions fixing the term of office of any officer, or his compensation, the legislature may change such term or compensation, and such change of term or compensation will apply as well to the officers then in office as to those to be thereafter elected. The authorities cited by the learned counsel for the respondent fully establish this point. *Butler v. Pennsylvania*, 10 How. (U. S.), 402; *Co. Com'rs v. Jones*, 18 Minn., 199; *Taft v. Adams*, 3 Gray, 126; *Conner v. New York*, 5 N. Y., 285; *People v. Banvard*, 27 Cal., 470; *In re Bulger*, 45 Cal., 553; Cooley on Constitutional Limitations, 276 and note; *Supervisors v. Hackett*, 21 Wis., 613; *State v. Douglas*, 26 Wis., 428; *Hall v. State*, 39 Wis., 79. Many other cases might be cited holding the same doctrine; but these are sufficient, as the decisions of our own court have settled the question in this state. The case cited and relied upon to some extent by the learned counsel for the appellant, reported in 62 Pa. St., 343, has very little bearing upon the question, as it appears from the opinion that the constitution of that state fixed the

term of office of the judge, and provided that adequate compensation should be provided by law for the judges, which should not be diminished during the continuance of their offices.

The real question in the case is, Does the provision of the constitution above quoted apply to the office of county judge? Upon this question we think this court has already decided against the appellant's claim. In the case of the *Board of Supervisors v. Hackett*, 21 Wis., 613, it was expressly held that "the word 'compensation,' as used in section 26, art. IV of the constitution, above quoted, signifies a return *for the services of such officers as receive a fixed salary payable out of the public treasury of the state;* and that it does not, and was not intended to, apply to the remuneration of that large class of officers, such as sheriffs, constables, clerks of courts, and others, who receive specific fees for services as they are from time to time required to render them. . . . I think the limitation applies only *to those salaried officers paid by the state*, and not to those minor ones who, according to the usual course of public business, are paid by fees taxed or allowed for each item of service as it is rendered." It will be seen, by an examination of the laws respecting judges of probate, and county judges exercising the duties of judges of probate, that they come within the class of officers whose compensation is not paid out of the state treasury, and that for many years after the adoption of the constitution they were paid for their services by specific fees, both for their services as judges of probate and for services as judges having civil jurisdiction. Sections 6 and 7, ch. 131, R. S. 1849, and sections 12 and 13, ch. 133, R. S. 1858.

The policy of paying fees instead of fixed salaries to county judges was not changed until 1868, when the legislature passed chapter 121, Laws of 1868, which provides that the several county boards shall fix a salary or compensation for the county judges of their several counties, to be paid out of the county

treasury, and deprives such judges of the right to charge fees for their services. That act did not, however, apply to counties where the county judges had jurisdiction in civil actions. The same act provided that certain charges should be paid by executors, administrators and guardians into the treasury of their respective counties, instead of the fees theretofore paid for the services of the county judges as judges of probate. This latter provision was evidently intended to create a fund to pay the salary of the county judge. By chapter 40, Laws of 1872, the provision in chapter 121, Laws of 1868, providing for the payment of charges by executors, etc., was repealed, and the salaries of the judges have since been, with a very few exceptions, paid out of the funds of the county raised by general taxation. The policy which has been pursued by the state in changing the compensation of county judges from fees for special services to salaries, fixing the gross amount of their compensation, has also been adopted in the case of county clerks and county treasurers. In the early history of the state, and down to 1863, these officers were also paid by the receipt of fees, but since that time they have received fixed salaries. If the legislature had full control of the subject of the fees to be received by these officers, when their compensation was fixed by the amount of fees earned, it would seem that the same control over such compensation would remain with the legislature when it fixed their compensation in the shape of a salary. The rule stated in the case of *Supervisors v. Hackett, supra*, limiting the constitutional restriction as to the compensation of public officers to such officers as receive their compensation out of the state treasury, has been at least impliedly recognized and adopted by the legislature in fixing the salaries of county officers. It will be seen, by an examination of the statutes fixing the salaries of all the county officers, that the legislature has taken the pains to enact that such salary shall be fixed before the election takes place, and when fixed, as provided by law, it shall not be increased or

diminished during the term of office of the person elected. The present law upon the subject of the salaries of county officers, including county judges (section 694, R. S. 1878), provides that "the county board, at their annual meeting in November, shall fix the amount of salary which shall be received by every county officer, including county judge, who is to be elected in the county during the next ensuing year, and is entitled by law to receive a salary out of the county treasury; and the salary so fixed shall not be increased or diminished during his said term of office." The section then provides for the payment of salaries out of the county treasury, and for the salary the officer shall receive in case the county board fails to fix it as above required, and also provides that "this section shall not apply to any particular county where salaries of its officers have been specially provided and fixed by law." The limitation in this section does not, therefore, apply to the relator in this case, as he does not claim his salary under this section, but claims that it has been specially provided and fixed by law. All the acts which have conferred upon the boards of supervisors of counties the right to fix the salaries of officers, have contained a similar restriction to the one contained in the section above quoted, making the same unchangeable when once fixed by the board during the term of the officer elected, except chapter 121, Laws of 1868, which first authorized the county boards to fix the salaries of county judges, and chapter 220, Laws of 1863, which first gave a salary to the county treasurer. See section 85, ch. 13, R. S. 1858, as to salary of district attorney; sections 1 and 2, ch. 399, Laws of 1864; sections 1 and 2, ch. 75, Laws of 1867. If the legislature supposed the constitutional inhibition applied to all county officers who received a fixed salary, it was a superfluous work on its part to re-enact that provision in the laws providing for such salary. Whether the legislature itself could change the salary of any county officer whose salary had been fixed by the county board, during the term for which he was elected,

by a change of the general law on the subject, or by a direct act fixing the salaries at a different sum from that fixed by the board of supervisors, is a question not presented in this case. Following the decision in the case of *Supervisors v. Hackett*, we hold that the legislature had a right to change the salary of the relator during his term of office.

There is another view of the case which shows the propriety of the change made in this case. It is evident from the legislation upon the subject, that the " second county court for Brown county " was not created as a probate court in the first instance, but as an inferior court having civil and criminal jurisdiction, evidently as a relief to the circuit court of said county. It was supposed that the necessities of the people required the creation of such court in order to dispatch the business of litigation in that county. And the salary of $3,000 was given to the judge of the court as a court of civil and criminal jurisdiction, and not as a court of probate powers. The law expressly provided that when the probate business should devolve upon that court, by the occurrence of a vacancy in the office of the county judge having probate jurisdiction, his salary should be increased to $3,500. The people of Brown county, after an experience of a few years, concluded that there was no longer any necessity for the county court as a court of civil and criminal jurisdiction, and asked to have so much of the law as conferred that jurisdiction upon the county court repealed. The legislature repealed the law to that extent, and at the same  repealed so much of the law as gave the judge the salary of $3,500, and fixed the salary at $1,500. The county court of Brown county has now the same jurisdiction, and no more than it would have had if the law of 1875, creating " the second county court for Brown county," had never been passed; and the only difference now between the county court of Brown county and the other county courts of the state not having jurisdiction in civil or criminal cases, is that the salary is fixed by the legislature instead of the county board.

There was certainly no injustice in this law, and it ought to be sustained unless it conflicts with some clear constitutional inhibition. As an inferior court of civil and criminal jurisdiction, it is the creature of the statute, and not of the constitution. It was a court which the constitution permitted the legislature to create, and did not prevent it from destroying. The legislature had, therefore, plenary power over that court. It could create or destroy it at its pleasure; and this power of creating or destroying these courts at the will of the legislature has never been questioned, and has been frequently exercised. Suppose that in this case, and before a vacancy had occurred in the regular county court of Brown county, the legislature had repealed the act creating the "second county court for Brown county:" would any provision of the constitution have been violated? We are not aware of any provision of the constitution which would prevent such repeal. If the repeal took effect, then there would be no longer any judge of said court, and no right to receive a salary as such judge. There is no substantial difference between the supposed case and the one we are now considering. If the salary of $3,000 was given by the legislature as compensation solely for the services of the judge as a judge of the court having civil and criminal jurisdiction, when there was no longer any necessity for such court, and it was destroyed, it was right that the compensation for the service no longer required should be taken away. But in this case the whole compensation was not taken away, although the judge was relieved of all the services for which the compensation was given. We think the relator has no cause of complaint, and no right to the relief asked by his complaint.

It was claimed by the learned counsel for the respondent that the original law creating the "second county court for Brown county" was void, because it provided that the term of office of the judge of such court should continue for more than six years, and was therefore a violation of section 2, art.

VII of the constitution, which provides that the term of office of the judges of inferior courts shall not be longer than that of the judges of the circuit court. In the view we have taken of this case it is not necessary to decide this question. We would, however, suggest that the act might be sustained, as the body of the law provides that the judge of such court shall be elected on the first Tuesday of April next after the passage of the law, and every six years thereafter, whose term of office shall be six years from and after the first day of January next after his election. So far there is no objection to the law; then there is this proviso: "*Provided*, that the term of service of the first judge to be elected shall commence on the first Monday of May next." This proviso might be void, as in conflict with the provision of the constitution above quoted, and yet not affect the body of the act. It could hardly be said that this proviso was so material a part of the act that the legislature would not have passed any part of the act unless the proviso had been embodied therein. If the proviso be in conflict with the constitution, then it may be rejected as void, and the act be read as though it were not contained therein, and the constitutionality of the act so read be sustained.

*By the Court.*— The judgment of the circuit court is affirmed.