STATE OF NEBRASKA, EX REL. SAMUEL J. GORDON, V. FRANK E. MOORES, MAYOR, ET AL.

FILED DECEMBER 5, 1900. No. 11,592.

1. **Compensation of Constitutional Officer.** The compensation or salary of an officer created by the constitution can not be increased or diminished during his official term.

2. **Police Judge Constitutional Officer.** The office of police judge or police magistrate of an incorporated city is called into existence by the constitution.

3. **Holding Over: PART OF TERM.** Holding over beyond the fixed term of an officer pending the election of a successor in pursuance of the requirements of the constitution is as much a part of the term of office as that which precedes it.

4. ————: INCREASE OR DIMINUTION OF SALARY. Where a person lawfully continues in an office created by the constitution, by virtue of his original election and qualification, after the expiration of the fixed term, but before his successor is elected and qualified, the salary of such officer holding over, can not be increased or diminished.

ERROR from the district court for Douglas county.
Tried below before ESTELLE, J. . *Reversed.*

*J. W. Eller* and *A. W. Jefferis*, for plaintiff in error.

*W. J. Connell, contra.*

NORVAL, C. ·J.

This action is in mandamus originally brought in the
district court for Douglas county. In November, 1895,
relator was duly elected police judge of the city of
Omaha, by virtue of which election he was entitled, by
the charter of said city, to serve in such capacity for
two years, from the first Tuesday in January, 1896, until
the first Tuesday in January, 1898. Under the charter
existing at that time, his salary was fixed at $2,500 per
annum. In 1897 the legislature enacted a new charter
for the city, wherein the term of that office was at-
tempted to be fixed at three years, and the salary dimin-
ished to $1,200 per annum.. The city election under said
new charter was held on the 20th day of April, 1897,
and it was provided by such charter that the term of
office of the person elected police judge at such election
should extend from the third Monday succeeding his
election to the third Monday in March, 1900. Relator,
at the election held on the said 20th of April, 1897, re-
ceived a plurality of the votes cast for police judge.
Afterwards, in the case of *State v. Stuht*, 52 Nebr., 209,
it was decided that the legislature had no power to make
the term of police judge longer than two years, the term
fixed for that class of officers under the constitution, and
held the portion of the charter in that respect void. As
no election was held in November, 1897, relator held
over under the provisions of section 20, article 6, of the
constitution. His salary at the rate of $2,500 per annum
was paid until the first Tuesday in January, 1898, since
which time the city has refused to pay him at a higher

rate than $1,200 per annum, the amount fixed by the act of 1897; and this action was brought to compel the payment of the difference between the amount fixed by the old charter and that designated by the new. Relator was unsuccessful in the lower court, and brings error to reverse the judgment.

Section 16, article 3, of the state constitution declares: "Nor shall the compensation of any public officer be increased or diminished during his term of office." This provision of the fundamental law has been construed to apply alone to officers created by that instrument, and as to such officers their compensation or salary, as the same existed when the official term began, could be neither increased nor diminished during such term. *County of Douglas v. Timme*, 32 Nebr., 272. A police magistrate or police judge of an incorporated city or town is a constitutional officer. Constitution, art. 6, sec. 1. Therefore the provisions of section 16, article 3, are applicable to the office of the police judge of the city of Omaha, and the salary of such officer can not lawfully be increased or diminished during the official term. The only question, therefore, necessary to determine, out of the multitude argued by the parties, is, whether or not the term served by the relator subsequent to the first Tuesday in January, 1898, is a part of his term of office, within the purview of that portion of section 16, article 3, of the constitution to which reference has already been had. If the time relator served subsequent to the first Tuesday in January, 1898, is a part of his term of office, if he has had but one term of office, and not two terms, then he is entitled to compensation at the rate of $2,500 per annum, regardless of whether that part of the charter of 1897, which attempted to fix the salary of that officer at a lower rate, is or is not valid, which latter question we do not decide.

This controversy arises by reason of the fact that two sections of the constitution, the one relating to executive officers and the other applicable to judicial officers,

differ in form; and counsel contend that, because of a difference in the wording of the two sections, a different construction should be placed upon the one governing judicial to that placed upon the one relative to executive officers. Section 1, article 5, which falls within the present discussion, is as follows: "The executive department shall consist of a governor, * * * who shall each hold his office for the term of two years from the first Thursday and [after] the first Tuesday in January next after his election, and until his successor is elected and qualified." It is conceded that, if one of the officers mentioned in the section above quoted, hold over his fixed term, such holding over would be a mere continuance of his former term, and would entitle him to the protection of section 16, article 3, above quoted; and doubtless that is the law. *State v. Boyd*, 31 Nebr., 682; *State v. Smith*, 87 Mo., 158; *Eddy v. Kincaid*, 28 Ore., 539; *Baker City v. Murphy*, 30 Ore., 405; *Gosman v. State*, 106 Ind., 203; *People v. Tilton*, 37 Cal., 614.

In *Baker City v. Murphy, ubi supra*, Wolverton, J., in delivering the opinion of the court, observed, page 415: "One thing, however, is palpably manifest, that the right to hold over is by virtue of the previous appointment or election and qualification; it is a right accorded by statutes regulating the tenure of office. The holding does not come to an end on the day of the expiration of the statutory period, unless there comes a duly elected and qualified officer to cut it off, or unless his recognized successor is inducted into the office. In one sense, the holding over is *pro tempore*, because the time of the holding is dependent upon the election or appointment of a successor; and in another it may be considered as the occupancy of a successor's term, which is shortened by that length of time. But the holding for the technical term and the holding over is a recognized right arising from one appointment or one election. The tenure of office is indivisible. It cannot be considered as a broken term, or as a double term; it is one continuous holding;

and the holding over, abiding the election of a successor, it seems to us, is as much a part of the term of office as that which precedes it, and the interpretation of the bond in question must be governed accordingly."

A case much in point here is *State v. Smith*, 87 Mo., 158, 160. Black, J., in the course of his opinion, says: "It is true the law by which the relator was appointed fixed the term of office at four years, and contemplates that at the expiration of that time a new appointment will be made, but the same law also contemplates that the appointing power may not be promptly exercised, and to prevent a vacancy the incumbent is made to hold over until such appointment is made. This is a contingency contemplated by the law, and enters into every such appointment, and the time he holds over the designated period is as much a part of the term of his office as that which precedes the date at which the new appointment should be made. We have seen this is so for all purposes of holding the office, and in suits against the officer and his sureties on his official bond, and it must also be true with respect to the emoluments of the office."

The office of police judge, however, falls within section 20, article 6, of the constitution, which is as follows: "All officers provided for in this article shall hold their offices until their successors shall be qualified and they shall respectively reside in the district, county or precinct for which they shall be elected or appointed. The terms of office of all such officers, when not otherwise prescribed in this article, shall be two years. All officers, when not otherwise provided for in this article, shall perform such duties and receive such compensation as may be provided by law." It is argued that, by reason of the difference in the phraseology of these two provisions, it was intended by the framers of the constitution that the hold-over term of a judicial officer should not be considered a part of his regular or fixed term, but should be considered a new or distinct term;

that if the framers of the constitution had intended the
tenures of office of the two classes of officers to be the
same, they would have used the same form of expres-
sion in both sections.  Arguments based upon the mere
forms of sentences, or the collocations of sentences in a
paragraph, are usually weak, and we think that in this
case they are exceptionally so.  One of the arguments
of counsel for respondents is that the fact that the sen-
tence which provides that judicial officers shall hold
their offices until their successors are qualified precedes
the one which fixes the length of their term, is signifi-
cant, when it is remembered that in the section relating
to executive officers the length of term precedes the pro-
vision that they shall hold their office until their succes-
sors are elected and qualified.  It is also argued that
the fact that a provision foreign to the matters in con-
troversy, that with respect to the residence of judicial
officers, is interpolated between the provision relating to
length of term and that relating to their holding over,
serves also to differentiate the meaning of this section
from the one concerning executive officers, which is com-
pact, having no provisions foreign to these two injected
into it.  We fail to see the force of this argument.  The
framers of the constitution had command of the whole
of the English language, one which is explicit, by which
to express their meaning, and had they intended that a
different rule should obtain relative to hold-over execu-
tive and judicial officers, it is reasonable to presume
that they would have used language clearly expressing
such purpose.  Obviously they had in mind a uniformity
of meaning, rather than a diversity.  Nor do we appre-
hend they supposed it was necessary to adopt a dead
uniformity of forms, in order that a uniform construc-
tion of constitutional provisions might be obtained.
The meaning of section 20, article 6, seems clear enough,
though doubtless a more compact form of expression
might have been adopted, as did obtain in section 1,
article 5, regulating the terms of executive officers.  But

until a reason more convincing than the arguments based on the mere form of the sentence, or lack of uniformity of expression, is adduced to support the contention that the constitution builders desired diversity in meaning when uniformity would subserve the same ends, we are constrained to hold that, so far as relates to the question in controversy, no difference obtains between the tenure of an executive officer holding over after the expiration of the term to which he was elected or appointed, and that of a judicial officer, but in either class the holding over and the regular term constitute one term of office, within the meaning of section 16, article 3.

It follows that in refusing the writ of mandamus prayed for the district court erred, and its judgment is therefore

REVERSED.