1. Const. art. 12, § 3, provides that the compensation of any public officer shall not be increased or diminished during his term of office.   The article is in four sections, and appears under the heading, "Public Accounts and Expenditures."   The first section provides that no money shall be paid out of the treasury, except upon appropriation by law, and on warrant drawn by the proper officer; the second provides that the general appropriation bill shall embrace only appropriations for ordinary expenses of the executive, legislative, and judicial departments; the third provides that the Legislature shall never grant any extra compensation to any public officer, employee, or contractor, and contains the above provision as to increased or diminished compensation; and the fourth section provides for an itemized statement of receipts and expenditures.   Const. art. 5, § 19, provides that the term of the county judge shall be for two years, until otherwise provided by law, but makes no provision for his salary, while, on the other hand, sections 8, 15 and 30 of that article, and article 21, § 2, definitely fix and provide for the terms and salaries of the supreme and circuit judges.   Held that, construed by its context, the provision of article 12, § 3, includes under the

term "public officers" only state officers who draw their salary from the state treasury, and does not include the county judges.

2. Laws 1901, p. 130, c. 104, § 3, provided for the determination of a population of a county in order to fix the salary of the county judge by requiring the county auditor to multiply the number of votes cast for Governor at the preceding election by 4½; Laws 1903, p. 112, c. 104, § 1, amended this provision by providing that it should be the duty of the county auditor to file a certificate showing the population of the county "immediately after the taking effect of the act," and at certain times thereafter, and that such population should be determined by multiplying the sum of names contained in the registration lists, made prior to the last general election, by 5. This act was passed in February, 1903, a county judge having been elected in November, 1902. Held, that the county judge was entitled to a salary for the year 1903, based on the new method of computation.

HANEY, J., dissenting.

(Opinion filed July 13, 1904.)

Appeal from circuit court, Brown county; Hon. J. H. Mc-Coy, Judge.

Mandamus by J. H. Hauser against C. H. Seeley and others, commissioners of Brown county. From a judgment for defendants, plaintiff appeals. Reversed.

*J. H. Hauser*, for appellant.

*F. E. Campbell*, for respondents.

CORSON, P. J.    This is a proceeding by mandamus to compel the county commissioners of Brown county to allow and direct a warrant to be drawn in favor of the plaintiff for his salary as county judge at the rate of $2,000 per annum. Findings and judgment were in favor of the defendants, and the plaintiff has appealed.

At the November election, 1902, the plaintiff was elected county judge of Brown county, and at the time of his election

the salary was fixed by the Legislature, in effect, at $500 per annum. That is to say, estimating the population of Brown county by the method then provided by law, the salary of the county judge was $500. That method was as follows: The county auditor was required to multiply the number of votes cast for Governor at the preceding election by $4\frac{1}{2}$, and the product was declared to be the population of the county. Section 3, c. 104, p. 130, Laws 1901. In February, 1903, the Legislature amended the law as it then existed, providing that it should be the duty of the county auditor to file his certificate with the clerk of the circuit and county courts immediately af- ter the taking effect of the act, and thereafter on or before the 31st day of December following each general election, which certificate should show the population of such county, and that such population should be determined by ascertaining the total sum of names contained in the registration lists made prior to the last general election, and multiplying the same by 5. Section 1, c. 104, p. 112, Laws 1903. Immediately after the passage and approval of the act, the county auditor of Brown county filed the certificate required by the said act, and from which it appeared that the population of said Brown county was over 20,000. Thereupon the plaintiff, as county judge, claimed a salary after said date·at the rate of $2,000 per annum, which is the sum fixed by the statute (section 3, c. 104, p. 130, Laws 1901) as the salary of judges in counties having a population of over 20,000. The county commissioners rejected the claim of the plaintiff for any sum in excess of $500 per annum. The population, by the method prescribed for ascertaining such population at the time the plaintiff was elected and entered upon the discharge of his duties, was a little over 11,000, under

which the plaintiff was entitled to a salary of $500 per annum; and by the method prescribed by the act of 1903 the population was determined to be over 20,000, and consequently his salary would be $2,000 per annum.

It is insisted by the state's attorney of Brown county in support of the action of the county in rejecting the plaintiff's claim in excess of $500 per annum that as that was the salary fixed at the time he was elected and entered upon the discharge of his duties, on the first Monday in January, 1903, the said commissioners could not legally allow a greater salary under the provisions of section 3, art. 12, of the state Constitution, which provides, among other things, "nor shall the compensation of any public officer be increased or diminished during his term of office."

The appellant contends (1) that a county judge, under our Constitution, is not such a public officer as is included within that term in the clause of the Constitution above quoted; (2) that if he is a public officer, within the meaning of that section, the Legislature has not, in terms, increased his salary, but that the same has been increased by providing a different method of ascertaining the true population of the county, and that an increase of salary under such a law is not in violation of the provisions of the Constitution. The question, therefore, presented for our determination, is what is the proper construction to be placed upon the term "public officers," as used in the section of the Constitution above referred to? This term has not a very clearly defined meaning. In section 1, Mr. Mechem, in his work on Public Officers, says: "A public office is the right, authority, and duty, created and conferred by law, by which, for a given period, either fixed by law, or enduring

at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer." In the note to that section the learned author gives various other definitions, but in none of them is it made clear what particular officers are deemed public officers, within the meaning of the constitutional provision above referred to; and it is only by the context, therefore, that we can determine what class of public officers the framers of the Constitution had in mind when using the term in the clause above quoted. This clause of the Constitution is found in an article of four sections, under the heading, "Public Accounts and Expenditures," Const. art. 12. The first section provides, "No money shall be paid out of the treasury except upon appropriation by law and on warrant drawn by the proper officer." The second section provides that the general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, etc., and the third section provides as follows: "The Legislature shall never grant any extra compensation to any public officer, employee, agent or contractor after the services shall have been rendered or the contract entered into, nor authorize the payment of any claims or part thereof created against the state, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void; nor shall the compensation of any public officer be increased or diminished during his term of office: provided, however, that the Legislature may make appropriations for expenditures incurred in suppressing insur-

rection or repelling invasion." And section 4 provides that "an itemized statement of all receipts and expenditures of the public moneys shall be published * * * and such state- ment shall be submitted to the Legislature at the beginning of each session by the Governor with his message." It will thus be seen that all of the provisions contained in these sections apply only to state matters, unless the clause we are consider- ing is an exception. We are of the opinion that it would not be a fair or reasonable construction of this clause to hold that the framers of the Constitution, in an article devoted exclusive- ly to state matters, intended to include therein county officers under the term "public officers." The attention of the framers of the Constitution being directed to state matters, in using the term "public officers" in connection with accounts and expendi- tures they evidently had reference to such state officers as are provided for by the Constitution, who would draw their salary from the state treasury. This is the view taken by the Su- preme Court of Wisconsin of a similar section of the Constitu- tion of that state. Supervisors v. Hackett, 21 Wis. 613; Rooney v. Supervisors, 40 Wis. 23; State ex rel. Martin v. Kalb, 50 Wis. 178, 6 N. W. 557. In the first case above cited the Su- preme Court of that state, speaking by Mr. Justice DIXON, says: "I think the word 'compensation,' as used in section 26, art. 4, of the Constitution, signifies the return for services of such officers as receive a fixed salary, payable out of the pub- lic treasury of the state, and that it does not, and was not in- tended to, apply to the remuneration of that large class of offi- cers, such as sheriffs, constables, clerks of courts, and others, who receive specific fees for specific services, as they are from time to time required to render them. The gross annual com-

pensation of such officers is always uncertain and fluctuating, and the receipts during one term of office, or portion of a term, as compared with those of another, may be, and often are, largely increased or diminished. The conclusion that it was not the intention to restrict the power of the Legislature as to the compensation of officers of this class is so obvious to me, from the very context, and the opposite construction would produce such great and manifest public inconvenience, that I cannot make it plainer by any mode of reasoning which I can adopt. I think the limitation applies only to those salaried officers paid by the state, and not to those minor ones, who, according to the usual course of public business, are paid by fees taxed or allowed for each item of service as it is rendered." The reasoning of the court in that case meets with our approval. It is true that the court in that case was speaking of a county treasurer, but the same rule was applied in the case of a county judge in State ex rel. Martin v. Kalb, supra. In that case that learned court says: "It will be seen by an examination of the Constitution that neither the term of office, nor the compensation to be paid to county judges, or judges of inferior courts, are fixed by the Constitution. It is not seriously contended that the Legislature would not have the power to change both the term of office and the compensation of the county judges, were it not for the provisions above quoted. It is well settled that, in the absence of any constitutional prohibitions or affirmative provisions fixing the term of office of any officer, or his compensation, the Legislature may change such term or compensation, and such change of term or compensation will apply as well to the officers then in office as to those to be thereafter elected." Neither the salary nor the

term of office of the county judge is definitely fixed by the Constitution of this state. Sections 19, 30, art. 5, Const. By section 19 it is provided that the term of the county judge shall be for "two years until otherwise provided by law." And by section 30, the judges of the supreme, circuit, and county courts "shall each receive such salary as may be provided by law consistent" with the Constitution. The terms and salaries of the supreme and circuit judges are definitely fixed by other provisions of the Constitution. Sections 8, 15, art 5, and section 2, art. 21, Const. The case at bar therefore comes clearly within the principles of the decisions in the above cases. The Supreme Court of Nebraska has given a similar provision in their Constitution a somewhat broader meaning, and held that it includes all officers provided for by the Constitution. State ex rel. Gordon v. Moores, 61 Neb. 9, 84 N. W. 399. But the argument of the court in arriving at this conclusion is not entirely satisfactory, as it is open to the objection suggested by the Supreme Court of Wisconsin, that a part of the county officers, at least, are paid by fees, and not by fixed salaries. We are of the opinion, therefore, that the learned circuit court was in error in holding that that clause included the county judge, as one of the public officers therein specified.

It is further insisted by the respondent that as the salary of the county judge was fixed, payable annually, and he had served a part of his term under the law by which his salary was fixed at $500 per annum, his salary in no event could be changed during the first year. But this contention is untenable. The intention of the Legislature that the salary of county judges in the counties which should be shown by the new method of determining the population to have a greater

population than that fixed by the prior act should be at once increased, is clear from the fact that the Legislature provided that the county auditor should, immediately after the passage of the act, file his certificate, showing the population as fixed by the act, and also from the fact that the act was passed with an emergency clause. We discover no constitutional inhibition preventing the Legislature from making the act at once effective, and we think it is the duty of the court to carry out that intention. It seems to be conceded that by the act of 1903 civil jurisdiction was conferred upon the county court of Brown county. The duties of the county judge were therefore increased, and he was necessarily deprived of the privilege of practicing in the circuit and justice's courts to a greater or less extent. It was but equitable and just, therefore, that his salary should be increased to correspond with his new duties. It is apparent, also, that the salary of the judge of Brown county had been erroneously fixed by the method prescribed by the law of 1901, and that the error was corrected by the law of 1903, and the judge's salary properly adjusted.

The judgment of the circuit court is reversed, and, inasmuch as there is no dispute as to the facts, that court is directed to enter judgment requiring the board of county commissioners of Brown county to allow and direct a warrant to be drawn in favor of the plaintiff for his salary at the rate of $2,000 per annum, as demanded in his complaint.

HANEY, J., dissenting.