STATE, EX REL. EDWARD B. McDERMOTT, APPELLEE, V.
CHARLES REILLY, APPELLANT.*

FILED JUNE 26, 1913. No. 17,921.

1. **Judges: POLICE MAGISTRATE: TERM OF OFFICE.** The office of police magistrate in cities of the second class having more than 5,000 and less than 25,000 inhabitants is created and the length of the term fixed by the constitution. The legislature cannot change the length of the term, nor remove the incumbent by legislation before the expiration of his term.

2. **Elections: POLICE MAGISTRATE: TIME OF ELECTION.** The provision of the constitution (art. XVI, sec. 13), fixing the time of holding general elections, and what officers shall be then elected, excepts "school district officers, and municipal officers in cities, villages and towns;" police magistrates in cities of the second class being municipal officers, the legislature may by statute provide the time of their election.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*John A. Miller* and *Frank E. Beeman,* for appellant.

*E. B. McDermott, W. L. Hand* and *H. M. Sinclair,* contra.

SEDGWICK, J.

Kearney is a city of the second class having more than 5,000 and less than 25,000 inhabitants. At the election held on the 4th day of April, 1911, the respondent, Charles Reilly, was elected police judge of the city, pursuant to section 8510, Ann. St. 1909. He duly qualified and entered upon the duties of the office, and has since been performing them. At the general election in the fall of 1911 one Willis L. Hand received a plurality of the votes cast for the office of police judge of the city. It is stipulated that he filed his official bond as such police magistrate, and that the bond was approved. He demanded possession

* Rehearing denied. See opinion, p. 238, *post.*

of the office from the respondent, which was refused. This action was begun in the district court for Buffalo county upon the relation of the county attorney of that county to test the respondent's right to hold the office. The district court entered a judgment ousting the respondent from the office, and the respondent has appealed.

Several important questions are presented and discussed in the interesting briefs of counsel, but the two principal questions are as to the validity of the said section 8510, which depends upon the power of the legislature to fix the time of the election of police magistrates; and the validity and effect of the act of 1911 (laws 1911, ch. 23), in so far as it might result in removing the respondent from office before the expiration of his term fixed by the constitution. Section 13, art. XVI of the constitution, specifies what officers shall be elected at the general election, "except school district officers, and municipal officers in cities, villages and towns." The relator argues that police magistrates of cities of this class are not municipal officers, and are therefore not within the exception. He contends that they are district officers and are within the general provisions of that section of the constitution. The only basis of this contention, so far as we can see, is derived from that part of section 18, art. VI of the constitution, which provides: "Justices of the peace and police magistrates shall be elected in and for such districts, and have and exercise such jurisdiction as may be provided by law." It is said that the legislature may create districts of any extent for police magistrates, and so extend their jurisdiction beyond the city limits; and, as the legislature by the act of 1911 (laws 1911, ch. 23; Comp. St. 1911, ch. 14a, art. II, sec. 1) has extended such jurisdiction for three miles beyond the city limits, by so doing it has created a district and made the police magistrate a district officer, which requires that he must be elected at the general election. If this is the correct construction of the constitution and statutes, the police magistrate of Omaha has jurisdiction in South Omaha, if not also in Council Bluffs, and the

police magistrate of South Omaha has like jurisdiction in Omaha. The magistrate of Kearney has jurisdiction of a part of the adjoining county, and, if the legislature should see fit, that jurisdiction might be extended so as to include Lincoln and Omaha. It does not seem to be necessary to determine this curious question, because even if such a district could be created by the legislature, and the jurisdiction of the police magistrate extended accordingly, he would still be a municipal officer within the meaning of the constitutional provision which we are considering. He would still, under present constitutional and legislative provisions, be chosen by the voters of the municipality. The only thing that the constitution fixes is to create the office of police judge and fix the length of the term. It does not prescribe when the term shall begin, nor when he shall be elected, nor in fact whether he shall be elected or appointed, nor how he shall be paid, nor what bond he shall give, nor who shall approve the bond; all of these things are fixed by the legislature, and are by the legislature made municipal matters. If the legislature could create a judicial district without reference to the present judicial districts, providing a judge for the district, with jurisdiction not superior to the present district courts, and attempted to do so without giving all the voters of the district a voice in his election, such legislation would probably be invalid. We do not think the legislature has attempted any such thing.

The police magistrate of a city, being a municipal officer, is especially exempt from the general provision of the constitution as to the time of his election, and that matter is left to the legislature. The office of police magistrate is undoubtedly a constitutional office in that the constitution provides that there shall be such an office and fixes the length of the term; all other matters with reference to the office are left to the legislature, and as to them it is a legislative office.

In *State v. Mayor*, 91 Neb. 304, this court took a different view, but upon motion for rehearing and further

consideration another argument was ordered. Afterwards the litigation was settled between the parties thereto, and the court had no opportunity to correct its former opinion. That opinion is not to be considered as authority, therefore, upon any of the points therein determined.

*County of Douglas v. Timme,* 32 Neb. 272, is not authority in this case for three reasons: The principal and sufficient reason is that this question was not involved. The only question in that case was whether the legislature could increase the compensation of an officer during his term, and, there being no provision in the constitution to the contrary, the court held that the legislature could do so. This does not affect this case.

In *State v. Stuht,* 52 Neb. 209, the act criticised provided that the police magistrate elected in Omaha in 1897 should enter upon his term of office before the term of the then incumbent expired, thus abridging the term of the incumbent, and this it was held the legislature could not do, since the constitution fixed the term of the incumbent at two years. It was because the legislature could not shorten the term of the incumbent that the time fixed for the new term to begin was in violation of the constitution, and not because the constitution fixed definitely when each term shall begin. This case is not governed by *State v. Stuht, supra,* nor *State v. Moores,* 61 Neb. 9. Neither of those cases depends upon the question here involved. Neither of them depends upon the question whether the constitution fixes the time of the year in which the term of the police magistrate must begin.

The contention that section 8510, Ann. St. 1909, not being repealed by the act of 1911, is still in force, and other contentions in the brief are not necessary to this decision. The constitution provides that the term of police magistrate shall be two years. The respondent was duly elected to that office in the spring of 1911, and his term of office did not expire until the end of that time.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

FAWCETT, J., dissenting.

The majority opinion ignores a number of important and, to my mind, controlling questions presented in the record and fully argued in the briefs and at the bar.

The case was tried upon a stipulation of facts, from which it appears that respondent has been performing the duties of police judge for many years, having been elected and re-elected from time to time at city elections held in the spring; his last election being on April 4, 1911. Under that election he qualified two days later and entered upon the discharge of his duties. On April 8, 1911, the legislature passed, with an emergency clause, an act relating to police magistrates. Laws 1911, ch. 23. At the general election in November, 1911, one Willis L. Hand received a majority of the votes cast for police magistrate, was declared elected, filed his bond and oath, and demanded the office, which respondent refused to deliver.

It is stated in the brief of respondent: "The legal questions involved in this case are the same as those involved in the case of the *State, ex rel. Benson, v. Mayor and Council of City of Hastings,* 91 Neb. 304." The decision in that case is then vigorously assailed by respondent. We there, without division, held: "The office of police magistrate being a constitutional office, and the constitution having fixed the time when such officer shall be elected, the time when, after election, he shall 'enter upon his term of office, and the duration of such term, the requirements of the constitution in those particulars must be complied with; and any attempt on the part of the legislature to provide for the election of such officers in any other manner or at any other times than fixed by the constitution is void." For our reasons in so holding, reference is made to the opinion in that case. Further consideration of the questions there decided leaves the writer still of the opinion that the decision was right, and that it should be adhered to.

The majority opinion errs when it states that "the court

had no opportunity to correct its former opinion." The final disposition of that case will be found in a *per curiam* order reported in 91 Neb. 852, as follows: "This cause was argued and submitted, and in due time a decision was rendered. The opinion is reported, *ante,* p. 304. A motion and briefs for rehearing were filed, and, upon further reflection and examination, some of the members of the court became doubtful of the correctness of the decision, and argument was ordered upon the motion for rehearing. When the cause was called for hearing, it was shown that the respondents had complied with the commands of the alternative writ of mandamus in all things and no rights could be protected or enforced by any further hearing. The motion for rehearing is overruled." The fact that the parties to that action had settled their differences and complied with the judgment of the district court could not prevent us from correcting our decision, if wrong. In justice to the district judges throughout the state, it was our duty to have done so. Not having made any correction, our judgment in that case stood in full force and effect, and was binding upon the trial courts of the state. The learned judge of the district court for Buffalo county undoubtedly took that view of the matter. We have, then, this situation: In *State v. Mayor* we affirmed the judgment of the district court for Adams county. The district court for Buffalo county followed our judgment. We now reverse its judgment. Our own former holding and the holdings of two district courts, one of them based upon our holding, are swept aside by a divided court. And yet some say that the law is an exact science. I have always insisted and still hold that decisions of this court should not be set aside by a "majority vote" of the court as subsequently constituted. I am all the more insistent upon that point because the attention of the court was called to the alleged error in the former decision, while the case in which it was rendered was still before it and might have been corrected, if wrong, before the decision became final, and binding upon the trial courts of the state.

BARNES, J., concurs in above dissent.

The following opinion on motion for rehearing was filed September 26, 1913. *Rehearing denied, and case dismissed:*

SEDGWICK, J.

Counsel for relator have filed an ingenious brief upon their motion for rehearing, in which they assert: "If the opinion already rendered in this case stands, the legislature will never be able to provide for a police magistrate's court for prescribed districts and also for municipal courts for cities and towns, but will be limited to just the one court, that of the police magistrate. So far this court recognizes but one of these courts. By its opinion herein this court has entirely nullified that part of section 1, art. VI of the constitution, that authorizes the legislature to create municipal courts for cities and towns. And this was done without naming that section at all.". They then ask the question: "Does the court want to leave these questions in this chaotic condition?"

The two questions determined in our former opinion (*ante,* p. 232) herein seem so clear and simple as not to require further comment, but the matter is of so much importance, and counsel are so vigorous and persistent in suggesting difficulties in the way of city authorities, that we have concluded to attempt an answer to some of their many contentions more or less related to the matters involved in this litigation. In the former opinion it is determined that the length of the term of office of police magistrates is fixed by the constitution, and the legislature cannot shorten the term, and cannot legislate the incumbent out of office during the term for which he was elected; that this is the only limitation upon the legislature in regard to this office, and therefore the legislature may, by appropriate legislation, provide for the election of such officers at the municipal election or at the general

election as it sees fit. Under the statute as it then existed the respondent was elected in the spring of 1911, and, as the constitution fixes his term at two years, the subsequent act of the legislature changing the time of the election to the general election in the fall of that year could not have the effect to shorten his term. In answer to this reasoning it was contended that the constitution also fixed the time of the election at the general election, and therefore the statute under which respondent was elected was invalid, so that there could be no valid election in the spring of 1911, and respondent was therefore not entitled to the office. This answer was based upon the further contention that the office of police judge in the city of Kearney is not a municipal office, and therefore not within the exception of section 13, art. XVI of the constitution. This last point was the gist of the controversy; it is the point relied upon in the dissenting opinion, although that dissent is wholly based upon the opinion in *State v. Mayor,* 91 Neb. 304, 852. The majority thought that, a reargument having been allowed in that case and the case having been disposed of by settlement of the parties thereto before the formal hearing was had, the opinion first filed should not be regarded as a precedent, and, even if it was so regarded, it was so manifestly wrong in holding that a police officer of a city is not a municipal officer that it ought to be overruled.

It was not held in our former opinion that the act of 1911 (laws 1911, ch. 23) is in any respect invalid. It was only held that that act could not have the effect to oust from office before the expiration of his term one who was duly elected and qualified before that act took effect. This, as before stated, was solely because the constitution fixed the length of the term. On the other hand, it was expressly held that "the legislature may by statute provide the time of their election." When the legislature has provided the time, an election may be held at the time so provided to fill a vacancy that may exist by the expiration of the term of the incumbent. The election of Mr. Hand

in the fall of 1911 was void because there was then no vacancy to be filled. The constitutional term of the respondent had not expired.

We cannot see any dilemma for the legislature, as suggested in the above quotation from relator's brief. By section 1, art. VI of the constitution, the legislature may establish courts inferior to the district court for cities and incorporated towns. Such courts "for cities and incorporated towns" will of course be municipal courts, and the legislature may provide the time of election, and, except for police magistrates, may also fix the term of office. The constitutional limitation of the power of the legislature to alter the length of the term of police magistrates may not be necessary, but section 20, art. VI, seems to so provide and has been many times so construed. Section 18, art. VI, provides that police magistrates shall be elected, "in and for such districts * * * as may be provided by law." If under this provision the legislature should divide our larger cities into districts and provide for the election of a police magistrate in and for each district, such police magistrates would still be municipal officers. They would in a sense be district officers; that is, they would be elected in and for a municipal district. When the constitution was adopted there were established courts in existence in this state with well-known jurisdictions, called "district courts." These courts were continued by section 1, art. VI of the constitution.

The legislature may establish "other courts" which must be inferior to the "district courts," but the district courts are continued in existence by the constitution itself. To say that, because the legislature may establish courts "inferior to the district courts" which are the creatures of the constitution, it therefore follows that, if the legislature divides a city or town into districts and authorizes a police court in each district, such court becomes a "district court," within the meaning of the constitution, and because it is a district court it cannot be a municipal court,

seems puerile in the extreme. If such a court can be called a district court of the municipality or a district court in any other sense, it is not the "district court" which the constitution requires and permanently establishes. And if it is a district court in any sense, even if a constitutional court, it would still be also a municipal court. But it is not established by the constitution, and any court that the legislature may establish for the city is a municipal court, and is wholly within the power of the legislature, with the one exception that the term of police judge must be two years. If the court established by the legislature for the city is not a police court, then this exception does not exist. In *State v. Moores,* 70 Neb. 48, it is said in the opinion of Mr. Commissioner GLANVILLE that the police judge of Omaha is a district officer, and not a municipal officer. This statement is a clear *non sequitur,* as already shown. The statement had nothing to do with the case then being considered. The point decided and the law of the case are stated in the syllabus. The conclusion reached is right, and the mistake of the court was in not placing the opinion in the unofficial reports.

There are several other decisions of this court involving the controversy of Judge Gordon as to his office and salary. In some of these decisions there are expressions used *arguendo* which perhaps are somewhat misleading. But the questions raised and decided are simple and rightly determined.

Prior to 1897 the charter of Omaha provided that the police judge or police magistrate should be elected at the general election in the fall, and the salary should be $2,500 a year. In 1897 the legislature amended the charter, and provided that the police judge should be elected in the spring, and the salary should be $1,200. Gordon was elected to the office in the fall of 1895 for a term of two years, beginning in January, 1896, and ending in January, 1898. An election was held in the spring of 1897 under the new act, and Gordon received a plurality of the votes cast. From that time the authorities refused to pay him

19

more than $1,200 a year, and he brought an action in mandamus to compel them to pay him at the rate of $2,500. The court held (*State v. Moores,* 61 Neb. 9) that the act of 1897 was void, and that the relator was holding under his election of 1895, and that until his successor was duly elected and qualified he held as of his original term, and was entitled to his salary of $2,500 a year during all of the time that he so held. This holding was followed in several subsequent cases. Then in the fall of 1901, at a general election, Gordon was a candidate, and Berka was also a candidate. Berka was elected for the term commencing in January, 1902, and duly qualified and performed the duties of the office. Gordon brought another action in mandamus to compel the authorities to pay him a salary for the years 1902 and 1903, and it was held (*State v. Moores,* 70 Neb. 48, third paragraph of the syllabus): "That a successor to relator for the office of police judge has been elected and qualified; that relator was not the incumbent of such office during the time for which he is seeking herein to enforce payment of salary, and that the writ prayed for was properly denied."

This was of course clearly right. The attempted legislation of 1897 had been held to be void. The term, therefore, was, as it always had been, for the two years commencing in January, and the police judge was, as he always had been, elected at the general election in the fall. Gordon had been allowed to hold over until his successor was duly elected at the fall election and had qualified and served, then he was refused any salary from that time on. That was what was decided in *State v. Moores,* 70 Neb. 48, and nothing else was decided, as will appear from the reading of the syllabus in that case. In the two opinions that were filed in that case, there is no clear and consecutive statement of the facts upon which the decision was founded. It was not necessary to discuss whether the police magistrate was a district officer or a municipal officer, and it does not appear that any such question was presented or discussed by the counsel. The statement that

it was a district office had nothing to do with the case. There was a rehearing granted, and Commissioner GLAN-VILLE'S opinion was done away with. In Commissioner OLDHAM'S opinion there is also some language *arguendo* which is now construed to mean that the office of police magistrate is not a municipal office, but no such point was decided in the case nor necessary to the decision.

To say that an officer elected by the voters of a municipality to an office established by the legislature in and as a part of the city charter, an officer who must hold office within that municipality, whose chief function is to construe and enforce the ordinances of the municipality, whose bond is presented to and approved by the municipality, is not a municipal officer, within the meaning of the constitution, appears to be ridiculous upon its face. The voters of the city elect him as they elect other officers of the city, and the intention of the constitution was to allow them to elect all municipal officers at the same election. The act of 1897 was not held invalid because the legislature could not provide for electing the police judge at the city election, but because they attempted to change the length of the term, which the constitution does not allow. The first case (61 Neb. 9, opinion by Justice NOR-VAL) clearly states this.

The motion for rehearing is overruled, and the case

DISMISSED.