STATE ex rel LAMM, Appellant, v. SPARTZ, et al, Respondents.

(255 N. W. 797.)

(File No. 7649.   Opinion filed June 21, 1934.)

*J. G. McFarland*, of Watertown, for Appellant.

*Ellsworth E. Evans* and *Arthur H. Hasche*, both of Watertown, for Respondents.

POLLEY, J. The relator in this action was elected to the office of register of deeds of Codington county at the general election in the fall of 1932. She qualified and took office on or about the 1st day of January, 1933. At the time of her election and at the time she qualified and took office the monthly pay provided by law for such officer was $157.92. By an act that was adopted during the 1933 session of the Legislature (chapter 71, Laws 1933), an act that affects the compensation of the county treasurer, county auditor, clerk of courts, register of deeds, and superintendent of schools, the compensation of the register of deeds for Codington county was reduced to $135.42 per month. This act went into effect on the 1st day of July, 1933. Plaintiff, claiming that the Legislature was without power to change her salary during the term for which she had been elected, instituted this proceeding for the purpose of restraining the county commissioners from putting said chapter 71 in effect so far as it applied to her office during the term for which she had been elected. The question involved in the case therefore is: Does the Constitution of the state permit the Legislature to change the compensation of the elected county officials during the term for which they were elected?

The Constitution provides for the election of state officials, fixes their term of office, and the compensation to be paid such officials (section 2, art. 21, State Const.). The Constitution provides for the election of the county officers and fixes the length of their term of office, but does not attempt to fix their compensation (section 5, art. 9, Const.). This leaves the fixing of the compensation of county officers with the Legislature.

Section 3 of article 12, state Constitution, reads as follows: "The legislature shall never grant any extra compensation to any public officer, employee, agent or contractor after the services shall have been rendered or the contract entered into, nor authorize the payment of any claims or part thereof created against the state, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void; nor shall the compensation of any public officer be increased or diminished during his term of office: Provided, however, that the legislature may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion."

Section 23 of article 3, state Constitution, reads as follows: "The legislature is prohibited from enacting any private or special laws in the following cases: * * * Creating, increasing or decreasing fees, percentages or allowances of public officers during the term for which said officers are elected or appointed. * * * "

The question of changing the compensation of a county officer after he had been elected and qualified was considered by this court in Hauser v. Seeley et al, 18 S. D. 308, 100 N. W. 437, 439. This case was considered at considerable length, and the court reached the conclusion that the provisions of section 3 of article 12, and section 23 of article 3, prohibiting the changing of the compensation of public officers during the term for which they were elected, does not apply to county officers but to state officers only, and counsel for relator frankly admits that under the decision in the Seeley Case she cannot recover. She contends, however, that the conclusion reached in this case is wrong and she asks that the decision be overruled and a different construction be put upon section 3, art. 12 of our Constitution.

Under the definition of "public officer," quoted from Mr. Mechem's work on public officers, in the Seeley Case, and approved by the court in that case, the register of deeds is a public officer, but it is held in the Seeley Case that the phrase "public officer," as used in section 3, art. 12 of our Constitution, has reference to state officers only and not to county officers. This decision is based largely on Board of Supervisors v. Hackett, 21 Wis. 617, 620, and State v. Kalb, 50 Wis. 178, 6 N. W. 557, 559. The defendant in the Hackett Case was a county treasurer. The defendant in the Kalb Case was a county judge. The offices of county treasurer

and county judge in Wisconsin are both constitutional offices. The term of both offices was fixed by the Constitution, but the compensation of the incumbents was fixed by the county board of supervisors. When the decision in the Hackett Case was rendered the county treasurer was receiving an annual salary, but the subject of the action was a special allowance for special service. At the time the decision in the Kalb Case was rendered the county judge was receiving an annual salary, but it had been a fee office until about 1868.

The Constitution of the state of Wisconsin contains the following inhibition: "Nor shall the compensation of any public officer be increased or diminished during his term of office." Article 4, § 26. The language is identical with the language in our Constitution.

The Wisconsin cases seem to turn more upon the meaning of the word "compensation" than upon the meaning of the phrase "public officers." Board of Supervisors v. Hackett, supra, involved a special "fee" for specific services. In the opinion in that case the court uses the following language: "I think the word 'compensation,' as used in section 26, art. 4 of the constitution, signifies the return for the services of such officers as receive a fixed salary payable out of the public treasury of the state; and that it does not, and was not intended to, apply to the remuneration of that large class of officers, such as sheriffs, constables, clerks of courts and others, who receive specific fees for specific services as they are from time to time required to render them. The gross annual compensation of such officers is always uncertain and fluctuating, and the receipts during one term of office, or portion of a term, as compared with those of another, may be and often are largely increased or diminished. The conclusion that it was not the intention to restrict the power of the legislature as to the compensation of officers of this class, is so obvious to me from the very context, and the opposite construction would produce such great and manifest public inconvenience, that I cannot make it plainer by any mode of reasoning which I can adopt. I think the limitation applies only to those salaried officers paid by the state, and not to those minor ones who, according to the usual course of public business, are paid by fees taxed or allowed for each item of service as it is rendered. The treasurer of a county is such an officer, and I do

not doubt that it is competent for the legislature to increase or diminish his fees or commissions during his term of office, or to fix the amount which he shall receive for any new service which may be required of him by law."

It is true the court says the constitutional provision applies only to those officers who receive a fixed salary payable out of the public treasury of the state. It does not say the Constitution applies to state offices only, but does say it does not apply to fee offices. The office involved in that case had been a fee office prior to 1863. The compensation of all the county offices was fixed by the board of county commissioners, and it does not appear that any county officer received a fixed salary as distinguished from fees.

State v. Kalb, supra, involved the office of county judge. At the time the case was decided the county judge received a fixed annual salary, but up to 1863 had received fees. The court held that the constitutional inhibition did not apply, not because the office was not a public office, however, but because the office had been a fee office; the court using the following language: "If the legislature had full control of the subject of the fees to be received by these officers, when their compensation was fixed by the amount of fees earned, it would seem that the same control over such compensation would remain with the legislature when it fixed their compensation in the shape of a salary. The rule stated in the case of Supervisors v. Hackett, supra, limiting the constitutional restriction as to the compensation of public officers to such officers as receive their compensation out of the state treasury, has been at least impliedly recognized and adopted by the legislature in fixing the salaries of county officers. It will be seen, by an examination of the statutes fixing the salaries of all the county officers, that the legislature has taken the pains to enact that such salary shall be fixed before the election takes place, and when fixed, as provided by law, it shall not be increased or diminshed during the term of office of the person elected. The present law upon the subject of the salaries of county officers, including county judges (section 694, Rev. St. 1878), provides that 'the county board, at their annual meeting in November shall fix the amount of salary which shall be received by every county officer, including county judge, who is to be elected in the county during the next ensuing year, and is

entitled by law to receive a salary out of the county treasury; and the salary so fixed shall not be increased or diminished during his said term of office.' "

The office of county judge involved in the Seeley Case, and that of register of deeds involved in this case, have always been salaried offices; therefore, the reasons assigned in the two Wisconsin cases and upon which those cases are based do not exist in the Seeley Case nor in this case; for these reasons those cases are not controlling in the Seeley Case nor in this.

██ It is next pointed out in the Seeley Case that the constitutional provision under discussion is found in article 12 of the Constitution, an article all of the provisions of which apply only to state matters, "unless the clause we are considering is an exception." It is true that the provisions of this article are devoted mostly to purely state matters, but the provision here involved is general in its nature and broad enough in its terms to include every public officer in the state. Had it been the intention of the framers of the Constitution that this provision should apply to state officers only, then the logical place to have put it is in section 12 of article 4, or in section 2 of article 21. This latter section fixes the salaries of all the state officers, and here would have been the logical place to insert the inhibition against changing salaries, had it been intended to affect the salaries of state officers only. On the other hand, had it been the intention to limit the inhibition to county offices only, the logical place for it would have been in section 5 of article 9. It was put in section 3 of article 12, and in terms broad enough to include both county and state offices and we believe it was intended to apply to both classes of offices. In the Seeley Case the court stresses the fact that by the law of 1903, the jurisdiction of the court is materially enlarged and that his duties were increased accordingly. These reasons do not apply in this case as it is not claimed that the jurisdiction or duties of the register of deeds were in any wise changed by the law of 1933.

Counsel for relator strenuously contends that the constitutional provision under consideration applies to all constutional offices. Certainly the language used in the Constitution is broad enough to bear this construction. Counsel cites innumerable authorities in support of this contention and we are of the opinion that this is the correct view. Our attention is called to the fact

that it is thirty years since the decision in the Seeley Case and that the doctrine of stare decisis should be applied. True, the Seeley Case has been in effect for thirty years, but this is the first time it has been called in question in any court, and it does not appear that any harm will result from overruling the case. The cases supporting relator's contentions are collected and reviewed in State ex rel Gordon v. Moores, 61 Neb. 9, 84 N. W. 399, and no good would be accomplished by further citation. Hauser v. Seeley is therefore specifically overruled, but nothing said herein will prevent chapter 71, Laws 1933, taking effect and applying to the officers therein named who are elected after the 1st day of July, 1933.

The judgment appealed from is reversed, and the cause is remanded to the trial court, with directions to grant the decree prayed for by relator. No costs will be taxed on this appeal.

All the Judges concur.